## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 49859

| | | |
|---|---|---|
| MARIANITA R. MARTINEZ, | ) | |
| | ) | |
|    Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VICTORIO CARRETERO, | ) | |
| | ) | **Boise, June 2023 Term** |
|    Respondent, | ) | |
| | ) | **Opinion Filed: November 29, 2023** |
| and | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| CARRETONERO TRANSPORTATION, | ) | |
| LLC; CARRETONERO LOGISTICS, LLC; | ) | |
| and CARRETONERO TRANSPORTATION | ) | |
| SERVICES, INC., | ) | |
| | ) | |
|    Respondents. | ) | |
| _____ | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Power County. Rick Carnaroli, District Judge. Paul S. Laggis, Magistrate Judge.

The decision of the district court is <u>affirmed in part</u>, <u>reversed in part</u>, and <u>remanded</u> with instructions that the district court remand this case to the magistrate court for further proceedings.

Barton, Atkinson & Murdoch, P.C., Rexburg, for Appellant Marianita R. Martinez. Steven A. Atkinson submitted argument on the briefs.

Blaser Oleson & Lloyd, Chartered, Blackfoot, for Respondent Victorio Carretero. Jeromy W. Pharis submitted argument on the briefs.

_____

BRODY, Justice.

By statute, Idaho recognizes common law marriages only if they were entered into by the parties before January 1, 1996. In the proceedings below, Marianita Martinez alleged that after she and Victorio Carretero divorced in April 1995, they subsequently entered into a common law marriage between their divorce in April 1995 and their move to California in November 1995.

After the filing of cross-motions for summary judgment on the common law marriage issue, the magistrate court proceeded to hold an evidentiary hearing without ruling on the motions and without objection from either party. At the evidentiary hearing, the magistrate court excluded all evidence of the parties' conduct on or after January 1, 1996, as being irrelevant to whether the parties had entered into a common law marriage prior to that date. This ruling resulted in the exclusion of, among other things, evidence of a life insurance application in which Carretero identified Martinez as his "wife" on January 10, 1996—two months after the parties left Idaho in November 1995. At the close of the hearing, the magistrate court concluded there was not sufficient evidence to show that the parties had consented to marry within the seven-month period prior to January 1, 1996. The magistrate court then dismissed Martinez's claim of a common law marriage, and on appellate review, the district court affirmed. We affirm in part, reverse in part, and remand.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Martinez and Carretero were originally married in California in November 1989, and had their first child in 1992. Two years after that, in 1994, a family dispute arose, during which Martinez and Carretero separated, and Martinez filed a petition for divorce on September 14, 1994, in Power County, Idaho. After that filing, Martinez worked the potato harvest in Idaho, after which the parties reconciled, and began living together again in a home in American Falls, Idaho. At the evidentiary hearing following the parties' cross-motions for summary judgment, Martinez testified that Carretero had asked her to "get back together" as "husband and wife" and to live together as a family. In contrast, Carretero never testified to why the parties reconciled, but did testify that after the reconciliation, he intended to get divorced.

There is no dispute that, after the reconciliation, the parties continued with divorce proceedings and on March 10, 1995, signed a Stipulation for Divorce in Idaho. The decree of divorce was entered a month later, on April 18, 1995. During this time, it is undisputed that the parties were living together at the home in American Falls. It is also undisputed that roughly seven months after the decree was entered, in November 1995, the parties moved together, with their child, to California.

During the seven-month period in Idaho before the move, Martinez did not enforce Carretero's child support payment obligation required under the Stipulation for Divorce. Also,

during this seven-month period, Martinez alleged—through declarations and testimony from herself and witnesses at the later evidentiary hearing—that she and Carretero continuously lived together as husband and wife with their minor child, shared control over financial and legal matters, publicly held themselves out as husband and wife to family members, and that Carretero provided for their family while Martinez stayed home to raise their minor child. For example, Martinez's adult niece testified at the evidentiary hearing that Carretero called Martinez his "wife" during the time before the parties moved from American Falls to California. Her sister-in-law testified to the same. After the parties moved from Idaho to California in November 1995, two years later, in 1997, they moved to Arizona for Carretero's employment. The parties eventually returned to Idaho sometime in 2005 or 2006.

## B. Procedural Background

Twenty-five years after the parties' decree of divorce was entered, on May 4, 2020, Martinez filed a verified pleading titled Petition for Decree of Divorce with Minor Children/Complaint in the district court of Bannock County, Idaho. In it, Martinez pleaded two alternative claims: (1) that the parties entered into a common law marriage during the seven-month period they lived together in Idaho following their April 1995 divorce; or (2) if there was no common law marriage, Martinez alleged there was "general partnership" between herself and Carretero regarding a trucking business that the parties allegedly formed together—and Martinez sought its dissolution, compensatory damages, restitution, and other damages under a related wage claim.

Roughly two months after Martinez filed her pleading, the district court entered a procedural order that explained the "alternative" nature of Martinez's pleading and sua sponte bifurcated the case after consulting with the administrative district judge. The district court "remanded" the common law marriage and divorce portion of the pleading to the magistrate court and outlined a contingent procedural disposition. If a common law marriage existed, the magistrate court would "proceed with addressing and resolving the divorce issues and the alternatively pled count will become moot." On the other hand, if a common law marriage did not exist, the matter would be "referred back to district court and the alternatively pled claims related to dissolution of business relationships and the wage claim [would] proceed in district court."

Days prior to entry of the procedural order, Carretero filed a motion to dismiss the portion of the pleading alleging the existence of a common law marriage and requesting a divorce.

However, Carretero's motion did not rely solely on the pleadings—instead, it relied on matters outside the pleadings where Carretero attached his affidavit and testified that, among other things, he never entered into a second marriage with Martinez. Martinez initially objected to Carretero's motion to dismiss as procedurally improper, and after the procedural order was entered, filed a memorandum in support of her argument that dismissal was improper. Martinez concluded her memorandum by acknowledging that "the question of the marriage should be determined at trial as soon as possible following the completion of discovery."

However, four days later, Martinez filed a motion for a declaratory judgment under Idaho Rule of Family Law Procedure ("I.R.F.L.P.") 506, as it existed prior to July 1, 2021, contending that the undisputed evidence in the record established as a matter of law that the parties entered into a common law marriage. In support of her motion, Martinez relied on her verified pleading, and alleged various "undisputed" facts she claimed established that the parties had entered into a common law marriage in Idaho in 1995 after their divorce. Despite now arguing that she was entitled to judgment as matter of law based on undisputed material facts in the record, Martinez specifically requested a "speedy hearing where she may call witnesses and present evidence in support of this motion as provided for by I.R.F.L.P. 506 [now I.R.F.L.P. 508 ("The court may order a speedy hearing of an action for a declaratory judgment.")]."

Four days later, on August 11, 2020, Carretero filed a notice that he "intends to require strict compliance" with the Idaho Rules of Evidence in the pending family law proceeding before the magistrate court pursuant to Rule 102(B)(1) of the Idaho Rules of Family Law Procedure, in effect prior to July 1, 2021. The same day Carretero filed his notice for strict compliance, he filed a motion for change of venue from Bannock County, Idaho, to Power County, Idaho, on the common law marriage and divorce issue. The magistrate court in Bannock County granted the motion, and venue changed to the magistrate court in Power County.

After the change of venue, on October 29, 2020, Martinez filed a motion for summary judgment under Idaho Rule of Family Law Procedure 505 (now I.R.F.L.P. 507), and a motion for declaratory judgment under Rule 506 (now I.R.F.L.P. 508), as in effect prior to July 1, 2021. As with her prior motion for a declaratory judgment, this combined motion alleged that based on purportedly undisputed facts, a common law marriage between Martinez and Carretero formed as a matter of law in Idaho in 1995 after their divorce. However, unlike her prior motion for a declaratory judgment, Martinez attached declarations from herself and other family members, and

various documents spanning 1996 to 2008, all supporting her claim that after the parties' April 1995 divorce, the parties entered into a common law marriage during the seven-month period they continued to live together in Idaho.

Among other things, the documents attached in support included: the 1995 Stipulation for Divorce; a January 10, 1996, life insurance application signed by Carretero, which identified Martinez as Carretero's "wife"; a July 1996 claim for medical benefits signed by Carretero, which requested coverage for Martinez's medical treatment starting January 8, 1996, and identified Martinez as his "wife"; a 1998 joint vehicle purchase agreement with both parties' signatures; two separate 1998 vehicle insurance applications, both listing the parties as "married"; a 2000 letter concerning delinquent property taxes, addressing the parties as husband and wife who jointly owned the property ("H/W JT"); a 2000 rental agreement signed by both parties, representing both as legal owners of a single mobile home; and 2002 pay stubs from Carretero's former employer showing he claimed "married" filing status for purposes of his federal income tax withholdings that year.

In response, Carretero argued he was entitled to summary judgment because Martinez could not establish a prima facie case that a common law marriage had been entered into before January 1, 1996, which is the date of the statutory cut-off under Idaho Code section 32-201(2). Carretero also argued that any evidence of the parties' conduct after the cut-off date was irrelevant to whether a common law marriage was entered into before the cut-off date. Carretero did not attach new evidence in support of his cross-motion for summary judgment, and instead relied on his affidavit submitted in support of his motion to dismiss referenced above. In that affidavit, Carretero alleged, among other things, that he never remarried Martinez after the 1995 divorce decree was entered, and that since 1995 he has always filed his income taxes as a single person. However, Martinez only attached his Federal Tax Returns for tax years 2010 to 2018—which all reflect that he filed as "Head of Household."

A few weeks later, on December 7, 2020, the magistrate court held a hearing on the pending cross-motions for summary judgment on the common law marriage issue. The transcript from that hearing is not in the record on appeal. However, the magistrate court's minute entry and order from the hearing reflect that the court did not rule from the bench, instead it took the matter under advisement. Roughly two weeks later, at a hearing on December 22, 2020, the magistrate court advised the parties that it "would require further information and testimony after having reviewed

the file and Affidavits therein and would be setting the matter for an Evidentiary Hearing." Without clearly ruling on the cross-motions for summary judgment—or Carretero's argument to exclude any evidence of the parties' conduct after the statutory cut-off date as irrelevant—the magistrate court indicated that at the evidentiary hearing, the "point of inquiry will be for a time frame" prior to January 1, 1996. Nothing in the record reflects that Martinez objected to the evidentiary hearing as procedurally improper.

The evidentiary hearing was held a few months later, on March 15, 2021. At the hearing, Martinez called six witnesses to testify, including herself, family members, and Carretero. The magistrate court admitted exhibits offered by Martinez, which included, among other things, the 1994 petition for divorce, the 1995 Stipulation for Divorce, photographs of the parties' shared residence in 1994–95, and a March 1996 letter from Idaho's First Security Bank addressed to both parties reflecting a debt from 1995. However, after a relevancy objection from Carretero based on the statutory cut-off date, the magistrate court excluded all documents submitted concerning events that occurred after the statutory cut-off date, including evidence of a life insurance application, signed by Carretero on January 10, 1996, which identified Martinez as his "wife." The magistrate court also broadly excluded testimony concerning the parties' conduct as irrelevant if that conduct occurred after the statutory cut-off date.

At the close of Martinez's evidentiary presentation, Carretero moved for an involuntary dismissal with prejudice, arguing Martinez failed to establish a prima facie case for a common law marriage. Ruling from the bench, the magistrate court agreed. The magistrate court found that Martinez presented no direct evidence, through documents or testimony, to prove the parties consented to be married or lived as husband and wife and held themselves out as husband and wife in Idaho within the seven-month period between their April 1995 divorce and their November 1995 move to California. From this, the magistrate court concluded, as a matter of law, that no common law marriage was entered into in Idaho between the parties prior to January 1, 1996. Two days later, on March 17, 2021, the magistrate court entered a partial judgment, and a written decision memorializing its ruling. That same day, the magistrate court issued an order "upmanding" the case to district court to address the alternatively pleaded dissolution of the alleged general partnership and Martinez's wage claim.

Martinez timely appealed the magistrate court's decision to the district court. On intermediate appeal, Martinez argued that the magistrate court erred in (1) holding an evidentiary

hearing instead of granting Martinez summary judgment as a matter of law when Carretero raised no issue of material fact; (2) excluding evidence of the parties' conduct after the statutory cut-off date as irrelevant because such evidence was relevant to proving a common law marriage existed before that date; and (3) granting Carretero's motion for an involuntary dismissal when Martinez provided prima facie evidence of a common law marriage sufficient to shift the burden to Carretero to disprove the marriage by clear and convincing evidence. The district court determined each of these arguments was without merit and affirmed the magistrate court's decision. Martinez timely appealed to this Court.

## II. STANDARDS OF REVIEW

"When an appeal is initially taken to the district court from a decision by a magistrate, any subsequent review will be conducted independent of, but with due regard for, the decision of the district court." *O'Holleran v. O'Holleran*, 171 Idaho 671, __, 525 P.3d 709, 711 (2023) (quoting *Kelly v. Kelly*, 171 Idaho 27, __, 518 P.3d 326, 333 (2022)). When this Court reviews the decision of a district court acting in its appellate capacity, this Court reviews the record of the magistrate court "to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings." *O'Holleran*, 171 Idaho at __, 525 P.3d at 711 (quoting *Pelayo v. Pelayo*, 154 Idaho 855, 858, 303 P.3d 214, 217 (2013)). "This Court affirms the district court's decision as a matter of procedure if 'those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision[.]'" *O'Holleran*, 171 Idaho at __, 525 P.3d at 711 (quoting *Pelayo*, 154 Idaho at 858, 303 P.3d at 217).

"This Court exercises 'free review over questions regarding the application of procedural rules.'" *O'Holleran*, 171 Idaho at __, 525 P.3d at 711 (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). "This Court also freely reviews questions of law." *Regdab, Inc. v. Graybill*, 165 Idaho 293, 295, 444 P.3d 323, 325 (2019). Typically, "[w]hen reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard." *State v. Ogden*, 171 Idaho 258, 519 P.3d 1198, 1206 (2022) (quoting *State v. Chambers*, 166 Idaho 837, 840, 465 P.3d 1076, 1079 (2020)). However, "[t]he question of whether evidence is relevant is reviewed de novo, while the decision to admit relevant evidence is reviewed for an abuse of discretion." *Ogden*, 171 Idaho at ___, 519 P.3d at 1210 (2022) (quoting *State v. Hall*, 163 Idaho 744, 781, 419 P.3d 1042, 1079 (2018)).

## III.   ANALYSIS

**A. Any error in the magistrate court's decision to conduct an evidentiary hearing before ruling on the pending cross-motions for summary judgment was invited and not preserved for appeal.**

Martinez first argues the magistrate court procedurally erred by holding an evidentiary hearing without first ruling on the pending cross-motions for summary judgment concerning whether Martinez and Carretero had entered into a common law marriage prior to January 1, 1996. Martinez also argues the district court erred in concluding that she failed to preserve this issue for appeal. According to Martinez, had the magistrate court decided the cross-motions instead of proceeding to an evidentiary hearing, she would have prevailed in showing a common law marriage between herself and Carretero existed because he failed to allege any "facts in contradiction to those facts" asserted by her in support of her motion. Thus, she would have been entitled to judgment as a matter of law absent the error.

Two weeks after the magistrate court took the cross-motions under advisement, at the next hearing on December 22, 2020, the court informed the parties it stood undecided on the motions, and did not rule in favor of, or against, either party. Instead, the magistrate court stated it intended to hold an "evidentiary hearing" on the pending motions before it could rule on whether a common law marriage existed:

> THE COURT: I have reviewed the file and the affidavits, and it is my opinion that I would require further testimony in order to make a decision. *And I would like to set this matter for an evidentiary hearing so that you may call witnesses to provide additional information.* I would like to set that the first two weeks after Christmas. Will your calendars permit me to set that type of hearing in that time frame?
>
> [MARTINEZ'S COUNSEL]: That should be possible, Judge.
>
> THE COURT: [Carretero's counsel]?
>
> [CARRETERO'S COUNSEL]: I would agree that should be possible based on, I guess, everybody else. I mean, I've got some things there to contend with, but . . .
>
> . . . .
>
> THE COURT: I will have my clerk block out a half a day. And if we require additional time, I will accommodate that on a different day. I believe I've done enough research and review of the file that I will be able to point counsel in the direction of my questions, which may reduce the number of witnesses that are necessary. *However, I will allow the attorneys to present their case in a—I want*

*the attorneys to have the opportunity to present their—all of their information.* Any questions?

> [MARTINEZ'S COUNSEL]: No, Your Honor.

> [CARRETERO'S COUNSEL]: No, Your Honor.

(Emphasis added.)

We affirm the district court's conclusion that Martinez failed to preserve her argument that the magistrate court erred by conducting an evidentiary hearing. The record establishes that Martinez not only invited an evidentiary hearing, but also that she never objected to the hearing that eventually occurred. "The doctrine of invited error applies to estop a party from asserting an error when [the party's] own conduct induces the commission of the error." *Beebe v. N. Idaho Day Surgery, LLC*, 171 Idaho 779, __, 526 P.3d 650, 660 (2023) (alteration in original) (citation omitted). Stated another way, a party cannot "successfully complain of errors [the party] has acquiesced in or invited." *City of Middleton v. Coleman Homes, LLC*, 163 Idaho 716, 727, 418 P.3d 1225, 1236 (2018) (citation omitted). When a party invites an error, "such errors are not reversible." *Id*.

Here, two of Martinez's filings, both comprising the filings constituting her side of the pending cross-motions for summary judgment, acknowledged and requested a trial-like hearing to resolve the common law marriage issue—while at the same time asking for judgment as a matter of law without a trial-like hearing. First, in response to Carretero's motion to dismiss (which was in substance a motion for summary judgment which relied on Carretero's affidavit—a matter outside the pleadings), Martinez filed a memorandum which explicitly acknowledged "that the question of the marriage should be *determined at trial as soon as possible* following the completion of discovery." (Emphasis added.) Second, four days later, Martinez filed a motion for a declaratory judgment that the common law marriage existed as a matter of law, a motion that Martinez essentially reiterated and filed again with additional evidence after the change of venue**.** Relevant here, at the end of her first filed motion, Martinez explicitly "request[ed] [a] speedy hearing *where she may call witnesses and present evidence* in support of this motion as provided for by I.R.F.L.P. 506." (Emphasis added.) Thus, Martinez herself invited the magistrate court to hold the evidentiary hearing she now complains of on appeal.

Moreover, as evidenced by the colloquy above and the transcript of the evidentiary hearing, Martinez never objected to the hearing or argued that the magistrate court must first rule on the pending cross-motions for summary judgment before it could hold an evidentiary hearing. Instead,

Martinez fully participated in the evidentiary hearing, called witnesses, and offered evidence. Thus, apart from inviting the error, whether the magistrate court's procedural misstep was reversible error is an issue Martinez raised for the first time on appeal to the district court. Generally, we will not consider unobjected to issues raised for the first time on appeal. *See Gordon v. Hedrick*, 159 Idaho 604, 612, 364 P.3d 951, 959 (2015). For these reasons, we will not address Martinez's challenge to the magistrate court's decision to hold an evidentiary hearing without first ruling on the pending cross-motions for summary judgment and affirm that part of the district court's decision.

**B. The magistrate court erred by excluding evidence of the parties' conduct after December 31, 1995, and by granting Carretero's motion for an involuntary dismissal.**

Martinez also claims that the district court erred when it affirmed the magistrate court's decision to exclude evidence of the parties' conduct that occurred after December 31, 1995, on the basis that it was irrelevant to whether the parties had entered into a common law marriage. In 1995, "to promote the stability and best interests of marriage and the family," the Idaho Legislature amended Idaho Code sections 32-201 and 32-301 to eliminate the recognition of common law marriages in Idaho entered into after December 31, 1995. 1995 Idaho Sess. Laws 334, 335. The relevant provision that precluded common law marriages in Idaho provided that such marriages "created by consenting parties through a mutual assumption of marital rights, duties or obligations" would only be valid if "in effect prior to January 1, 1996[.]" I.C. § 32-201(2). In other words, this date is a statutory cut-off for the initiation of a lawful and valid common law marriage.

To prove a prima facie case of a common law marriage, a party must initially prove by a preponderance of the evidence the following four elements: (1) the parties were eighteen years of age or older and unmarried; (2) the parties consented to be husband and wife; (3) the parties assumed marital rights, duties, or obligations including—living together as husband and wife, treating each other in a manner typical of married people, and holding themselves out as husband and wife; and (4) the parties' consent and assumption of marital rights, duties, or obligations occurred in Idaho prior to January 1, 1996. *See Wilkins v. Wilkins*, 137 Idaho 315, 320, 48 P.3d 644, 649 (2002); *Metro. Life Ins. Co. v. Johnson*, 103 Idaho 122, 126–27, 645 P.2d 356, 360–61 (1982); I.C. § 32-201(2); *see also* I.C.J.I. 911. Critically, once a party presents sufficient evidence to establish a prima facie case of a common law marriage, "a presumption of marriage exists, which must be overcome by the opposing party with clear and convincing evidence." *Wilkins*, 137 Idaho at 320, 48 P.3d at 649; *Metro. Life Ins. Co.*, 103 Idaho at 126, 645 P.2d at 360.

On appeal, Martinez argues that the district court erred in affirming the magistrate court's decision to exclude all evidence of the parties' conduct on or after January 1, 1996, as irrelevant to whether the parties had entered into a common law marriage before the statutory cut-off date. Martinez also argues that the district court erred in applying the abuse of discretion standard to review the magistrate court's decision that evidence of the parties' conduct following December 31, 1995, was relevant because this Court's decisions hold that the issue of relevancy is reviewed de novo. Martinez maintains that evidence of the parties' conduct on or after January 1, 1996, is relevant because whether Carretero admitted Martinez was his wife in the time following the seven-month period in 1995—when the marriage was alleged to have occurred—has some tendency to make the fact of the marriage more probable. Martinez maintains the magistrate court's error in excluding relevant evidence of the parties' conduct on or after January 1, 1996, prevented her from "presenting a wealth of information" at the evidentiary hearing that supported her claim of a common law marriage.

Connected to this evidentiary challenge, Martinez argues that had the magistrate court properly admitted relevant evidence of the parties' conduct and applied the "presumption of morality" (a long-used term of art meaning the law favors the presumption of marriage rather than co-habitation) in favor of a marriage as provided in *Mauldin v. Sunshine Mining Company*, 61 Idaho 9, 17, 97 P.2d 608, 611 (1939), she would have established a prima facie case of a common law marriage sufficient to shift the burden to Carretero to prove, by clear and convincing evidence, that a common law marriage did not occur. Thus, the magistrate court's error affected her substantial rights because, had the magistrate court admitted the relevant evidence, it may not have involuntarily dismissed her case. For the reasons explained below, we agree with Martinez that the magistrate court erred in excluding the January 10, 1996, life insurance application and the July 1996 claim for medical benefits.

1. *The January 10, 1996, life insurance application and the July 1996 claim for medical benefits are relevant to proving the parties entered a common law marriage in 1995.*

During the evidentiary hearing, Martinez attempted to introduce and admit a copy of a life insurance application into evidence. The application was executed by Carretero and Martinez on January 10, 1996, and in it, Carretero identified Martinez as his "wife." Carretero objected that the application was not relevant to whether the parties had entered into a common law marriage and objected that Martinez should not be allowed to go down the other "list of documents" dated after December 31, 1995, that Martinez had submitted in support her motion for summary judgment.

After argument from the parties, the magistrate court sustained the objection and broadly ruled that evidence of the parties' conduct on or after January 1, 1996, would be excluded as irrelevant. In addition to the exclusion of the life insurance application, this ruling also resulted in the exclusion of a July 17, 1996, claim of medical benefits. In that claim, Carretero referenced Martinez's illness, which began January 5, 1996, and requested coverage for her treatment of that illness on January 8, 1996. He also identified Martinez as his wife. The magistrate court's ruling excluding both of these documents was in error, and the district court erred in affirming it.

Evidence must be relevant to be admissible. I.R.E. 402. This evidentiary baseline applies in family law proceedings regardless of whether the proceedings are conducted in strict compliance with the Idaho Rules of Evidence or the Idaho Rules of Family Law Procedure. *See* I.R.F.L.P. 102(B)(1) (2020). "Evidence is relevant if: (a) it has *any* tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." I.R.E. 401 (emphasis added). "Relevant evidence is admissible unless [the Idaho Rules of Evidence], or other rules applicable in the courts of this state, provide otherwise." I.R.E. 402. "Whether a fact is 'of consequence' or material is determined by its relationship to the legal theories presented by the parties." *State v. Garcia*, 166 Idaho 661, 670, 462 P.3d 1125, 1134 (2020) (citation omitted).

As a preliminary matter, the district court erred in reviewing the magistrate court's relevancy ruling for an abuse of discretion. Whether evidence is relevant is reviewed de novo—while the decision to exclude or admit relevant evidence under *another rule* is generally reviewed for an abuse of discretion. *Id.*; *compare State v. Diaz*, 170 Idaho 79, 91, 507 P.3d 1109, 1121 (2022) (explaining that whether to exclude relevant evidence as unfairly prejudicial under I.R.E. 403 is reviewed for an abuse of discretion), *with State v. Roman-Lopez*, 171 Idaho 585, __, 524 P.3d 864, 871 (2023) (clarifying that the nature of a hearsay ruling and the challenge to the admission or exclusion of potential hearsay evidence will decide the appropriate standard of review on appeal).

Here, the January 10, 1996, life insurance application has at least some tendency to prove that the parties consented to marry during the preceding seven-month window between their April 1995 divorce and their November 1995 move to California. In the application, Carretero identified Martinez as his "wife" and represented this as fact through his signature. This conduct by Carretero occurred *after* the parties' April 1995 divorce. Likewise, the July 17, 1996, claim for medical

benefits identifying Martinez as Carretero's wife as of January 5, 1996, also has some tendency to prove the same. Thus, the application and the claim for medical benefits are plainly relevant to proving a fact of consequence: that the parties may have consented to marry during the seven-month window in Idaho following the April 1995 divorce. Although the application was not executed *within* the seven-month window, any alleged "remoteness" to the seven-month window only bears "on the weight rather than the admissibility" of the evidence to proving the fact asserted (i.e., a contract to marry). *See Nelsen v. Nelsen*, 170 Idaho 102, 120, 508 P.3d 301, 319 (2022) (quoting *In re Estate of Brown*, 52 Idaho 286, 297, 15 P.2d 604, 607–08 (1932)).

Certainly, at some point, evidence "becomes so remote that it no longer tends to make a fact 'of consequence . . . more probable or less probable' and, therefore, is inadmissible" because it no longer meets the basic test for relevancy. *Nelsen*, 170 Idaho at 120, 508 P.3d at 319 (alteration in original) (citation omitted). However, that is not the case here. The application was executed roughly nine months from the start of the critical seven-month period and two months after its end. The timing of these documents is not so remote that they no longer have *any* tendency to make the fact of the parties' consent to marry within the seven-month period more or less probable. *See* I.R.E. 401; *see, e.g.*, *Burgess v. Salmon River Canal Co.*, 127 Idaho 565, 574–75, 903 P.2d 730, 739–40 (1995) (recognizing that data gathered four years after a flood could be excluded as irrelevant where it was too remote). Thus, it was error to exclude the January 10, 1996, life insurance application and the July 17, 1996, claim for medical benefits as irrelevant. We recognize that Martinez's appeal challenges the exclusion of additional evidence, created after 1996, which she contends tends to prove the parties held each other out as husband and wife. The magistrate court can address the admissibility of those documents on remand consistent with this opinion.

2. *The error in excluding relevant evidence affected Martinez's substantial rights.*

"On appeal, it is not sufficient simply to show error" in a ruling to admit or exclude evidence. *Reed v. Reed*, 160 Idaho 772, 775, 379 P.3d 1042, 1045 (2016). "A party alleging error must also show that the error affected the party's substantial rights." *Id.*; *see also* I.R.E 103(a); I.R.F.L.P 810 (2020) (revised Mar. 29, 2021, and renumbered I.R.F.L.P. 806). "A right is substantial if it could affect the outcome of litigation." *Bromund v. Bromund*, 167 Idaho 925, 932, 477 P.3d 979, 986 (2020) (citing *Fonseca v. Corral Agric., Inc.*, 156 Idaho 142, 149, 321 P.3d 692, 699 (2014), *abrogated on other grounds by Sims v. Jacobson*, 157 Idaho 980, 342 P.3d 907

(2015)). For the reasons stated below, we conclude that the magistrate court's error in excluding relevant evidence affected Martinez's substantial rights.

As discussed above, since Martinez alleges a common law marriage existed prior to the legislative repeal, we begin with the long-standing principle that "when a couple cohabit, assume the rights, duties and responsibilities of marriage, and hold themselves out as being married, a presumption of marriage arises which, if disputed, must be overcome by clear and positive evidence." *Matter of Eliasen's Est.*, 105 Idaho 234, 238, 668 P.2d 110, 114 (1983) (citing *Metro. Life Ins. Co.*, 103 Idaho at 127, 645 P.2d at 361). The magistrate court found that, following the entry of the Decree of Divorce on April 18, 1995, the parties continued to live together, contributed to the household, and provided care and shelter to their minor child before moving to California around the end of October, or early November 1995. Martinez's family testified that the parties referred to each other as "husband" and "wife," they were not made aware of the divorce, and considered the parties to be "married." However, the family did not testify with any specificity that the parties referred to each other as husband and wife during the relevant period in 1995.

The magistrate court concluded Martinez failed to establish a prima facie case of a common law marriage because there was no *direct* evidence to prove consent—such as the parties buying "insurance and put[ting] their names on there as husband and wife"—within the seven-month period the parties resided in Idaho in 1995 after the April 1995 divorce. In the absence of direct evidence, the magistrate court concluded that the parties living together and providing care and shelter to their minor child was not enough to establish that the parties consented to marry in light of the April 1995 divorce. Instead, to reestablish the martial relationship, the magistrate court concluded that Martinez needed to provide evidence of a "distinct and public manifestation" that the parties consented to be married.

However, the parties' consent "need not be manifested in any particular manner and no magic words are necessary but rather consent may be express *or it may be implied from the parties' acts and conduct.*" *Metro. Life Ins. Co.*, 103 Idaho at 127, 645 P.2d at 361 (emphasis added). While the July 17, 1996, claim of medical benefits and the life insurance application from January 10, 1996, could be subject to multiple interpretations or explanations, they at least have a tendency to prove Carretero consented to marry Martinez after the April 1995 divorce and within the seven-month critical period. Thus, had this documentation and the testimony relating to this documentation been admitted, prima facie evidence of the parties' consent to enter into a common

law marriage would have been present. The error in excluding the claim for medical benefits and life insurance application—which *did* reflect the parties as married two months after leaving Idaho—affected the magistrate court's conclusion that Martinez did not prove her prima facie case and resulted in the dismissal of her claim.

Furthermore, if the evidence had been admitted, Martinez may have met her burden to demonstrate by a preponderance of evidence that the parties consented to enter into a common law marriage and the presumption of marriage would have been applied. *See Metro. Life Ins. Co.*, 103 Idaho at 127, 645 P.2d at 361 (quoting *Mauldin*, 61 Idaho at 17, 97 P.2d at 611) ("When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of proof, the law raises a strong presumption of its legality[.]"). Then the magistrate court would have "assume[d] a martial relationship" within the seven-month period and shifted the burden to Carretero to prove no marriage occurred by clear and convincing evidence *before* it made ultimate findings on the elements of a common law marriage. *See id.*; *Wilkins*, 137 Idaho at 320, 48 P.3d at 649. In other words, had the error not occurred, Carretero may have been required to put on his own case and prove no marriage had occurred. The burden would require Carretero to provide evidence or testimony that—contrary to the testimony from family members put on by Martinez—he never publicly held Martinez out to be his "wife" between the parties' separation and move to California in November 1995. Therefore, the erroneous exclusion of this evidence could have affected the outcome of the litigation.

For these reasons, we reverse the district court's decision affirming the involuntary dismissal of Martinez's common law marriage claim and remand with instructions that the district court remand this matter to the magistrate court for further proceedings.

## C. Carretero is not entitled to attorney fees on appeal and Martinez is awarded costs.

Carretero requested attorney fees on appeal under Idaho Code section 12-121. Martinez did not request fees on appeal. "In order to be eligible for an award of attorney fees under Idaho Code section 12-121, the party must be the prevailing party on appeal." *Baughman v. Wells Fargo Bank, N.A.*, 162 Idaho 174, 183, 395 P.3d 393, 402 (2017) (citation omitted). Martinez is the prevailing party on appeal, not Carretero. Thus, Carretero is not entitled to fees. Additionally, as the prevailing party, Martinez is awarded costs as a matter of course. I.A.R. 40(a).

## IV. CONCLUSION

For the reasons set forth above, the district court's decision is affirmed in part and reversed in part, and the case is remanded with instructions that the district court remand this matter to the magistrate court for further proceedings. Costs are awarded to Martinez on appeal.

Chief Justice BEVAN, and Justices STEGNER, MOELLER and ZAHN CONCUR.