# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50686-2023

JON HILL and SHAWNA HILL, Husband and Wife,

    Plaintiffs-Appellants,

v.

EMERGENCY MEDICINE OF IDAHO, P.A.; STUART EDWARDS CLIVE, M.D.,

    Defendants-Respondents,

and

BUSINESS ENTITIES I through X,

    Defendants.

Boise, January 2025 Term

Opinion filed: March 27, 2025

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Steven Hippler, District Judge.

The decision of the district court is <u>reversed and remanded</u>.

Pedersen Whitehead & Hanby, Twin Falls, for Appellants. Michael J. Hanby, II argued.

Tolman Brizee & Cannon, P.C., Twin Falls, for Respondents. Casey J. Hemmer argued.

---

ZAHN, Justice.

This case concerns a medical malpractice claim brought by Jon and Shawna Hill and their children. The Hills allege that Dr. Stuart Clive and his employer, Emergency Medicine of Idaho, P.A. ("EMI"), breached the standard of care by misdiagnosing Mr. Hill with vertigo when he was suffering a stroke. Following a ten-day trial, the jury rendered a verdict in favor of EMI and Clive.

On appeal, the Hills challenge the district court's dismissal of the Hill children's claims, two of the district court's evidentiary rulings made during the trial, and the district court's denial

of the Hills' motion for a new trial. For the reasons discussed herein, we affirm the district court's dismissal of the children's claims, but we reverse the district court's decision overruling the Hills' objection to expert testimony on the topic of "hindsight bias" because we conclude the testimony was not relevant. We hold that this error prejudiced a substantial right of the Hills and therefore vacate the judgment and remand this matter for a new trial. Given this remand, we do not address the Hills' other issues on appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 2017, forty-four-year-old Jon Hill became sick and complained of dizziness, nausea, weakness, and balance issues during an early morning meeting. Mr. Hill was driven to the St. Luke's Regional Medical Center Emergency Room in Meridian, Idaho, by his wife, Shawna Hill, and two of Mr. Hill's friends in attendance at the meeting.

Upon arrival at the emergency room, Mr. Hill was assigned to Dr. Stuart Clive. Clive was employed by EMI, a company that contracts with St. Luke's to provide doctors to staff emergency departments at St. Luke's facilities. Clive evaluated Mr. Hill, diagnosed him with peripheral vertigo, and discharged him. The next morning, Mr. Hill was found unresponsive in his home. He was again transported to a St. Luke's facility, where he was treated for a stroke. Mr. Hill remained in the hospital for several weeks and suffered severe physical and cognitive impairments.

Jon and Shawna Hill and their children filed suit against EMI and St. Luke's. The Hills sued each defendant separately, but the cases were later consolidated. Each alleged claims for negligence, gross negligence, reckless misconduct, and respondeat superior liability. The Hills later amended their complaint against EMI to add Clive as a defendant and amended it a second time to add allegations against EMI. The First Amended Complaint generally alleged that Clive and EMI were negligent; grossly negligent and/or reckless in the diagnosis and treatment of Mr. Hill, and that Mr. Hill was damaged as a result; and that EMI and St. Luke's were vicariously liable for Clive's negligence.

St. Luke's filed a motion for judgment on the pleadings pursuant to Idaho Rule of Civil Procedure 12(c), seeking to dismiss the children's claims because they were derivative of Mr. Hill's claims and because Idaho does not recognize a claim by children for loss of parental consortium. EMI and Clive joined St. Luke's motion. The district court agreed that Idaho has not recognized this type of claim and dismissed the children's claims. The Hills later stipulated to dismiss their remaining claims against St. Luke's with prejudice.

The district court conducted a ten-day jury trial on the remaining claims against EMI and Clive. During the trial, the district court made two evidentiary rulings that the Hills challenge on appeal. First, the district court overruled the Hills' objection to testimony by Clive and EMI's expert on the topic of "hindsight bias." Second, the district court prevented Mrs. Hill from testifying that friends who were present with her in the waiting room at the St. Luke's Emergency Room told her they called a doctor friend about Mr. Hill's symptoms and the doctor told them that Mr. Hill should be evaluated for a possible stroke. Mrs. Hill was also prevented from testifying that she shared this information with Clive. The jury returned a verdict in favor of EMI and Clive and the district court entered judgment in their favor.

Sometime after the verdict, the Hills learned that one of the jurors failed to disclose during voir dire that she was a close friend of Ken Pedersen, a partner at the law firm that represented the Hills at trial. Based on this information, the Hills filed a motion for a new trial pursuant to Idaho Rule of Civil Procedure 59(a)(1)(c) and argued they were deprived of a fair and impartial jury. After holding a hearing on the motion, the district court denied the Hills' motion for a new trial. The district court concluded that the Hills failed to establish any juror misconduct. The Hills timely appealed.

## II.     ISSUES ON APPEAL

1. Whether the district court erred in dismissing the Hill children's claims.
2. Whether the district court erred in overruling the Hills' objection to expert testimony concerning "hindsight bias."
3. Whether EMI and Clive are entitled to attorney fees on appeal.

## III.     ANALYSIS

### A. We affirm the district court's decision dismissing the Hill children's claims.

Some context is necessary to understand the district court's decision dismissing the children's claims. The defendants' motion for judgment on the pleadings sought dismissal of the Hill children's claims, which alleged negligence, gross negligence, reckless misconduct, and respondeat superior liability. The defendants argued that the children's claims should be dismissed for two reasons: (1) the Hill children did not allege any direct injury to themselves as a result of Clive's alleged negligence or that they were present during the alleged negligence; and (2) that Idaho law did not permit the Hill children to file a derivative claim, such as loss of parental consortium, for their father's non-fatal injuries. The Hill children opposed the motion. They did not contest the defendants' first basis for dismissing their claims. However, they did contest the

3

second and argued that Idaho public policy supported recognition of a claim by the Hill children for loss of parental consortium.

Although the Hill children did not specifically plead a claim for loss of consortium, the parties treated the children's claims as ones for loss of consortium before the district court and on appeal. The district court similarly described the children's claims in its summary judgment decision, and we will do the same here.

In ruling on the motion for judgment on the pleadings, the district court began by noting that Idaho caselaw only recognizes a loss of consortium claim by the spouse of the injured plaintiff. The district court considered the parties' policy arguments for and against recognizing a new claim for loss of parental consortium. However, the district court declined to recognize the new claim after concluding that, "the significant societal implications and policy weighing that accompany the recognition of the claim is best left to the legislature."

On appeal, the Hills acknowledge that this Court has not recognized a claim for loss of parental consortium. Nevertheless, they argue that this Court should recognize this claim because this Court and the legislature have long recognized a public policy in protecting family relationships. EMI and Clive (collectively "EMI") respond that neither the common law nor this Court has recognized a cause of action by children for loss of parental consortium. EMI contends that recognition of the claim is best left to the legislature.

"A judgment on the pleadings is reviewed under the same standard as a ruling on summary judgment." *Elsaesser v. Gibson*, 168 Idaho 585, 590, 484 P.3d 866, 871 (2021) (quoting *State v. Yzaguirre*, 144 Idaho 471, 474, 163 P.3d 1183, 1186 (2007)). A grant of summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "Where there are no disputed issues of material fact, the remaining question is one of law, over which this Court exercises free review." *Elsaesser*, 168 Idaho at 591, 484 P.3d at 872 (citing *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994)).

"A claim for loss of parental consortium asserts a child's own cause of action for physical, psychological, and emotional pain and anguish caused by the destruction or impairment of the parent-child relationship resulting from the death or injury of the child's parent." Elizabeth Williams, *Loss of Consortium in Parent-Child Relationship*, 12 Causes of Action 2d 419 (Feb. 2025 update); *see* 131 Am. Jur. *Proof of Facts* 3d 187 (Nov. 2024 update). The common law did

4

not recognize a claim for parental consortium. *See Norwest ex rel. Crain v. Presbyterian Intercommunity Hosp.*, 652 P.2d 318, 329 (Or. 1982); Pamela R. Bollweg, *Loss of Parental Consortium: An Argument in Favor of Recognition in South Dakota*, 38 S.D. L. Rev. 542, 543 (1993); Mary L. Tayrien, *The Child's Claim for Loss of Consortium Damages: A Logical and Sympathetic Appeal*, 13 San Diego L. Rev. 231, 235 n.23 (1975). Plaintiffs across the country have sought recognition of a claim for loss of parental consortium due to a non-fatal injury since the 1950s, but a majority of jurisdictions still expressly decline to recognize that cause of action. Williams, *supra*, 12 Causes of Action 2d 419; 131 Am. Jur. *Proof of Facts* 3d 187, *supra*.

This Court has previously recognized that in a wrongful death action children may recover general damages for the loss of a parent's companionship. *Horner v. Sani-Top, Inc.*, 143 Idaho 230, 237, 141 P.3d 1099, 1106 (2006). Outside of the wrongful death context, this Court has only recognized a loss of consortium claim premised on the existence of a marriage. *See Conner v. Hodges*, 157 Idaho 19, 27, 333 P.3d 130, 138 (2014) ("We have frequently held that an action for loss of consortium is predicated upon the *existence of a marriage*." (emphasis added)); *Summerfield v. Pringle*, 65 Idaho 300, 313, 144 P.2d 214, 220 (1943) (stating that an action for the loss of consortium vindicates a right growing "out of *the marriage relation*"). While we have not expressly rejected a claim for loss of parental consortium due to a non-fatal injury, the United States District Court of Idaho has declined to recognize the claim on at least two occasions. *See Green v. A.B. Hagglund & Soner*, 634 F. Supp. 790, 796–97 (D. Idaho 1986); *Garriott v. W. Med. Assocs., PLLC*, No. 2:16-cv-00081-CWD, 2017 WL 3015872, at *2 (D. Idaho Jul. 14, 2017).

It is against this backdrop that the Hills ask us to now recognize a cause of action for loss of parental consortium. They make three arguments in support of their request, none of which we find persuasive. We address each of their arguments in turn.

First, the Hills argue that several of our decisions appear to support recognition of a claim for loss of parental consortium. They refer us to our 2014 opinion in *Conner*, which acknowledged that "this Court has also held that third parties other than spouses may recover for injury to a relationship, recognizing the right of parents and children to recover for loss of comfort, society and companionship." 157 Idaho at 27, 333 P.3d at 138 (cleaned up) (citing *Hayward v. Yost*, 72 Idaho 415, 425, 242 P.2d 971, 977 (1952)). A closer review of this statement reveals that it was discussing a statutory right to damages, rather than a common law cause of action.

The quoted statement from *Conner* was made in connection with our analysis of an argument that we should extend a claim for loss of consortium to unmarried partners in "significant and meaningful relationships." *Id.* Our analysis acknowledged that, in *Hayward*, we held that parents and children could recover for the loss of "comfort, society and companionship." *Id.* (citing *Hayward*, 72 Idaho at 425, 242 P.2d at 977). We ultimately declined to extend a claim for loss of consortium to non-marital partners because at common law, the cause of action vindicated a right growing out of the marriage relationship. *Id.* We determined that any decision to extend the cause of action beyond the marital relationship required a weighing of policy interests that was best left to the legislature. *Id.* at 27–28, 333 Idaho at 138–39.

Our decision in *Hayward* discussed the statutory damages that parents could recover for injuries to their minor child. *See* 72 Idaho at 425, 242 P.2d at 977. At the time of our decision in *Hayward*, Idaho law permitted parents to maintain an action for the injury of their minor child and to recover damages "as under all the circumstances of the case may be just." *Id.* (citing I.C. § 5-311 (1952)). We then noted that this statutory language permitted the parents to recover damages for "the loss of protection, comfort, society and companionship" of their child. *Id.* (citation omitted).

Our statement in *Conner* allowing parents to recover these damages was premised on a statutory right to recover those damages. Idaho Code section 5-311 has since been amended and now concerns claims for wrongful death. Because our statement was based on statutory language rather than a common law cause of action, our statement in *Conner* offers no support for the Hills' contention that we should recognize a common law claim for loss of parental consortium.

The Hills also cite our decision in *Rindlisbaker v. Wilson*, 95 Idaho 752, 519 P.2d 421 (1974), to support their contention that we allowed a claim for loss of consortium when the injured party's wife and children were all named plaintiffs. However, our decision in *Rindlisbaker* did not address whether the children could maintain a claim for loss of parental consortium. Instead, our discussion focused on the wife's right to bring the claim: "Idaho has recognized *the right of a wife* to sue for loss of consortium caused by a negligent injury to her husband." *Rindlisbaker*, 95 Idaho at 755, 519 P.2d at 424 (emphasis added). Nothing in *Rindlisbaker* indicates that this Court recognized a loss of parental consortium claim by the children.

Additionally, the Hills cite a district court case from the 1980s, *Camara v. Shellenberger*, Canyon County Case No. L-38572, in which a district court recognized a cause of action for loss

of parental consortium. It does not appear that the case was appealed to this Court. A trial court's decision is not binding on this Court.

Second, the Hills argue that, while a claim for loss of parental consortium did not exist at common law, this is an outdated view of children that stands in stark contrast to Idaho's current public policy, which fully recognizes children as people and seeks to protect their relationships with parents. In support of this argument, the Hills cite Idaho Code section 32-1013, which restricts governmental interference with the fundamental rights of parents; section 32-102, which defines an unborn person as a legal person; and section 32-1003, which states that parents can be held financially liable if they neglect to provide for their children. The Hills contend that these statutes evidence Idaho's policy of protecting children's relationship with their parents.

While the Hills are correct that the legislature has adopted these statutes, it has not enacted a statute for loss of parental consortium. Creating a new cause of action not previously recognized at common law "would necessitate identifying and weighing competing notions of public policy, social mores, and moral values," which is "best left to the legislature." *Conner*, 157 Idaho at 27–28, 333 P.3d at 138–39 (citation omitted). Simply put, courts do not legislate from the bench. *See Elec. Wholesale Supply Co. v. Nielson*, 136 Idaho 814, 825, 41 P.3d 242, 253 (2001). To the extent the Hills believe Idaho public policy favors the creation of a new cause of action for loss of parental consortium, their argument should be made to the Idaho Legislature, not this Court.

Finally, the Hills cite to Idaho's wrongful death suit statute and argue that allowing a child to recover for the wrongful death of a parent—but not an injury to a parent—creates a logical inconsistency in the law. Idaho Code section 5-311 allows "heirs" of a deceased person to "maintain an action for damages against the person causing the death . . . ." I.C. § 5-311(1). The legislature has not enacted a similar statute allowing children to seek damages for loss of parental consortium when a parent suffers a non-fatal injury. Again, creating a new cause of action is best left to the legislature, not this Court.

Having considered the Hills' arguments, we decline to recognize a new cause of action for loss of parental consortium in cases where the parent suffered non-fatal injuries. The Hills concede that the claim was not recognized at common law and that this Court has never recognized it. We agree with the district court that the weighing of policy considerations that comes with recognizing a new claim for loss of parental consortium is best left to the legislature. *Conner*, 157 Idaho at 27–28, 333 P.3d at 138–39 (citation omitted).

**B. The district court erred by permitting Dr. Adeoye's testimony on hindsight bias.**

We next turn to the Hills' arguments that the district court erred in its evidentiary rulings during the trial of this matter. Their first asserted error concerns the testimony of EMI's expert witness, Dr. Opeolu M. Adeoye, who testified on the topic of "hindsight bias" in the medical profession. At trial, the Hills objected to the testimony as irrelevant. The district court overruled the objection. The Hills argue the district court erred in doing so because Dr. Adeoye's testimony lacked foundation and was not the product of any scientifically recognized methodology; therefore, it was not tied to his background, his training, or the facts of this case. As a result, his testimony was not relevant. EMI counters that because the Hills failed to object to Dr. Adeoye's testimony based on lack of foundation at trial they cannot raise this argument for the first time on appeal. EMI also argues that Dr. Adeoye's testimony was relevant to defend against testimony that the Hills sought to present suggesting that Mr. Hill was suffering a stroke rather than vertigo.

*1. The Hills did not preserve their argument that Dr. Adeoye's testimony lacked foundation.*

We first address EMI's argument that the Hills failed to preserve their foundation argument for appeal because they did not raise an objection based on foundation at trial. "[F]or an objection to be preserved for appellate review, either the specific ground for the objection must be clearly stated, or the basis of the objection must be apparent from the context." *Nelsen v. Nelsen*, 170 Idaho 102, 123, 508 P.3d 301, 322 (2022) (quoting *Ballard v. Kerr*, 160 Idaho 674, 691–92, 378 P.3d 464, 481–82 (2016)). If a party fails to object to expert testimony based on inadequate foundation, that issue is not preserved for appeal. *Ackerschott v. Mountain View Hosp., LLC*, 166 Idaho 223, 235, 457 P.3d 875, 887 (2020). "To properly preserve and present to this [C]ourt claimed errors of this nature, timely and proper objection should be made" for two reasons. *Stewart v. City of Idaho Falls*, 61 Idaho 471, 478–79, 103 P.2d 697, 700 (1940) (citation omitted). "[F]irst so the trial court may have an opportunity to prevent or if possible eradicate such error by admonition or instruction, and second, that there be adverse ruling or action by the trial court for review by this court." *Id.*

We agree with EMI that the Hills failed to preserve their foundation argument for appeal. At trial, the Hills objected to Dr. Adeoye's testimony three times—once on relevance and "argument," once on relevance only, and once as a general objection with no stated reason. The Hills did not object to Dr. Adeoye's testimony on the basis that it lacked foundation. Accordingly, the Hills' argument that Dr. Adeoye's testimony lacked foundation is not preserved for appeal.

*2. Dr. Adeoye's testimony on hindsight bias was not relevant.*

We now turn to the Hills' argument that Dr. Adeoye's testimony was not relevant. The Hills argue that Dr. Adeoye's testimony was irrelevant because it did nothing to aid the jury in determining any of the issues in dispute. EMI argued that the testimony was relevant to defend against testimony and argument by the Hills, which focused on the outcome of the stroke, and to explain the dangers of viewing a case with hindsight bias.

We review challenges concerning the relevancy of evidence de novo. *Martinez v. Carretero*, 173 Idaho 87, 94, 539 P.3d 565, 572 (2023). Evidence is relevant if it "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Slack v. Kelleher*, 140 Idaho 916, 919, 104 P.3d 958, 961 (2004) (quoting I.R.E. 401). "Relevant evidence is admissible unless these rules, or other rules applicable in the courts of this state, provide otherwise." I.R.E. 402. "Irrelevant evidence is not admissible." *Id.*

At trial, Dr. Adeoye did not testify concerning the facts of this case or his opinions concerning Clive's treatment of Mr. Hill. Instead, Dr. Adeoye's testimony exclusively focused on the concept of "hindsight bias:"

> Q. [EMI's attorney] Doctor, you were retained by the defense in this case to review and provide certain opinions, correct?
>
> A. [Dr. Adeoye] Correct.
>
> Q. And are the opinions we're going to discuss today held to a reasonable degree of medical certainty on a more probable than not basis?
>
> A. Yes.
>
> Q. And if there are any opinions that do not meet that standard, will you please let me know?
>
> A. Will do.
>
> Q. Doctor, in your work as an emergency physician and in your role at the hospital, do you have occasion to review the care and treatment provided to patients by other doctors?
>
> A. Yes.
>
> Q. And are you familiar with the term "hindsight bias"?
>
> A. I am, yes.
>
> Q. Can you describe for us what hindsight bias means to you?
>
> [Hills' Attorney]: Objection. I think this is argument.

THE COURT: Hang on a second.

[Hills' Attorney]: Relevance.

THE COURT: Overruled.

Q. [EMI's attorney]: Go ahead, doctor.

A. I think when we look back at individual cases, we often have more information than the person who was, in fact, taking care of the patient has at the time that they are taking care of the patient, so hindsight bias basically refers to a tendency to make judgment with more information in hand than the person actually had when they were making the information—when they were making decisions with that information in hand.

Q. And in your view and based on your experience, what is the problem with hindsight bias in that context?

[Hills' Attorney]: Objection, relevance.

THE COURT: Well, is the answer different than what he just said?

[EMI's attorney]: I don't know exactly what he's going to say. I can move on to a different question, Your Honor.

THE COURT: I think you've already asked him that question.

Q. [EMI's attorney]: Doctor, in your experience can hindsight bias be more prevalent in certain types of cases?

[Hills' Attorney]: Objection.

THE COURT: Overruled.

THE WITNESS: May I answer?

Q. [EMI's attorney]: Yes, you may.

A. Yes, I think in instances where there's a poor outcome, hindsight bias tends to— it is an emotive process when there is a poor outcome, and we tend to be frankly harsher on the person who was making the decisions with less information than we are now making the decisions with.

Q. Thank you, doctor. I don't have any other questions at this time.

The Hills then cross-examined Dr. Adeoye. During cross-examination, EMI objected to the Hills' questions regarding the standard of care. This resulted in a bench conference at which the district court suggested that, had it known ahead of time that EMI was only going to ask general questions without reference to the standard of care, it may not have allowed EMI to present Dr. Adeoye's testimony:

Q. [Hills' Attorney] What does "worst first" mean in a differential diagnosis context?

A. [Dr. Adeoye] I think it is to consider the worst case scenario first.

10

Q. And depending how dangerous the diagnosis is, you have to take all reasonable steps to rule that out, isn't that true?

[EMI's attorney]: Objection, your Honor. May we approach.

THE COURT: You may.

(Bench conference.)

[EMI's attorney]: *Seems to me we're moving into standard of care questions, which I did not ask him about. I asked him general hindsight bias. I did not tie it to this case or talk about the standard of care.*

[Hills' attorney]: Then what was the relevance?

[EMI's attorney]: You already made that objection so we're past that.

THE COURT: Well, I think the relevance was exactly where you wanted to go, which is without testifying about standard of care, have him testify about standard of care, which is to say that there may be a tendency to judge somebody's care using hindsight, and granted you didn't get specific in this case, *but I think counsel is right in a sense, because I didn't know that's where you were going. If I would have known that's all you were going to do with this witness, I may not have let you put him on.*

(Emphasis added.)

We agree with the Hills that the district court erred in overruling their trial objection because Dr. Adeoye's testimony was not relevant. First, Dr. Adeoye's testimony covered issues that are entirely within the "common sense and normal experience" of the average juror. *Tech Landing, LLC v. JLH Ventures, LLC*, 168 Idaho 482, 486, 483 P.3d 1025, 1029 (2021). It is within the experience of the average juror that "hindsight is 20/20." The jury did not need Dr. Adeoye to explain that concept to them. Dr. Adeoye's expert testimony on hindsight bias was not based on "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or determine a fact in issue." I.R.E. 702.

Dr. Adeoye's testimony was also irrelevant because, as EMI admitted during the bench conference with the district court, it was not related to the facts of the case or the standard of care issue at the heart of the case. As a result, Dr. Adeoye's testimony did nothing to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* I.R.E. 401.

For these reasons, we hold that Dr. Adeoye's testimony on hindsight bias was irrelevant and the district court erred in overruling the Hills' objections at trial. We also note that the district court suggested that, had it known that Dr. Adeoye was *only* going to offer general opinions on

11

the topic of hindsight bias, it may have sustained the objection. We point this out because EMI's expert disclosure painted a very different picture of the testimony it intended to elicit from Dr. Adeoye at trial. EMI disclosed that Dr. Adeoye was expected to testify that: he was familiar with the local standard of care and that Clive complied with the applicable standard of care; a reasonable medical provider would not have suspected a stroke based on Mr. Hill's presentation at the emergency room; Mr. Hill did not present with any significant risk factors for a stroke; it was pure speculation that a CT or MRI scan would have revealed Mr. Hill was suffering from a stroke; and the causes and clinical presentations of vertigo and the concept of hindsight bias.

In short, the testimony that EMI elicited from Dr. Adeoye at trial was a dramatic departure from the expected testimony described in EMI's expert disclosure. While we understand this departure may have constituted an unexpected surprise for the district court, Dr. Adeoye's testimony at trial was not relevant and the district court erred in overruling the Hills' relevancy objection.

*3. Dr. Adeoye's testimony affected the Hills' substantial rights.*

Despite having concluded the district court erred in allowing Dr. Adeoye's testimony to stand, we still must disregard "[a]ny error in the admission of evidence that does not affect the substantial rights of the parties . . . ." *Slack*, 140 Idaho at 924, 104 P.3d at 966. "A right is substantial if it could affect the outcome of litigation." *Martinez*, 173 Idaho at 98, 539 P.3d at 576 (quoting *Bromund v. Bromund*, 167 Idaho 925, 932, 477 P.3d 979, 986 (2020)).

The Hills contend their substantial rights were violated because Dr. Adeoye's testimony essentially became "proof" for the jury to consider because it came from a medical expert. EMI argues that the expert testimony did not affect the Hills' substantial rights because the Hills cross-examined Dr. Adeoye.

We hold that Dr. Adeoye's irrelevant testimony affected the Hills' substantial rights. The theme of "hindsight bias" was one that EMI repeated throughout the trial. EMI referenced the dangers of hindsight four times in their opening statement. EMI referenced Dr. Adeoye specifically in opening, foreshadowing to the jury that Dr. Adeoye would caution them "to be aware of something called 'hindsight bias' " and to "look at [the case] through that physician's lens [and] the information [he] had at the time, and not in hindsight of knowing there was a bad outcome." EMI also referenced the dangers of hindsight bias when judging Clive again in its closing

12

statement. In fact, EMI's final statement to the jury before it adjourned to consider the case asked the jury "not to judge Dr. Clive through hindsight bias."

Dr. Adeoye's testimony was an improper expert endorsement of EMI's hindsight bias theme. As such, his testimony was essentially a legal argument. We conclude that the Hills' substantial rights were affected because the erroneous admission of Dr. Adeoye's testimony could have affected the outcome of the litigation. Therefore, we vacate the judgment in favor of EMI and remand for a new trial. Because we are remanding on this basis, we will not address the Hills' remaining arguments.

## C. EMI is not entitled to attorney fees on appeal.

EMI requests attorney fees pursuant to Idaho Code section 12-121. Idaho Code section 12-121 permits the award of reasonable attorney fees to the "prevailing party" when the case was "brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. EMI is not the "prevailing party" on appeal, so no attorney fees are awarded.

## IV.    CONCLUSION

For the reasons discussed herein, we affirm the district court's dismissal of the children's claims for loss of parental consortium but vacate the judgment and remand for a new trial on Jon and Shawna Hills' claims. Because both parties prevailed in part, we decline to award either party costs on appeal pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.

13