**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 47602**

KRISTINA BROMUND,　　　　　　　　　　　)
nka KRISTINA HENRICKSON,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　Petitioner-Respondent,　　　　　　　)　　　　**Boise, November 2020 Term**
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)　　　　**Opinion Filed: December 22, 2020**
　　　　　　　　　　　　　　　　　　　　)
KURT E. BROMUND,　　　　　　　　　　　　)　　　　**Melanie Gagnepain, Clerk**
　　　　　　　　　　　　　　　　　　　　)
　Respondent-Appellant.　　　　　　　　)

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Gerald F. Schroeder, Senior District Judge. Annie O. McDevitt, Magistrate Judge.

The decision of the district court is affirmed.

Boise Law Group, PLLC, Boise, for Appellant. John A. Miller argued.

Dinius & Associates, PLLC, Nampa, for Respondent. Kevin E. Dinius argued.

---

BURDICK, Chief Justice.

This case concerns what portion of a military retirement benefit is subject to division following divorce. Specifically, we are asked to decide whether a 2017 amendment to the federal statutory scheme governing military retirement applies to the division of a benefit entered as part of a divorce decree in 2008 but not calculated until the husband's retirement in 2018.

Following his retirement in April 2018, Kurt Bromund moved the Ada County magistrate court to clarify the portion of his military retirement benefit subject to division with Kristina Henrickson, his former spouse. The magistrate court ruled that the parties' 2008 divorce decree controlled and the total benefit amount at the time of Bromund's actual retirement was subject to division. Bromund appealed to the Ada County district court, which affirmed, ruling that the 2017 amendment to the military retirement statutes—which measures the divisible amount of the

1

retirement benefit as of the date of divorce—did not apply retroactively. We affirm the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Bromund and Henrickson married on October 26, 1990. The next year, Bromund joined the military. By late 2005, the parties had separated and Henrickson filed a pro se complaint for divorce in August 2008. The complaint included the following proposed distribution of Bromund's military retirement benefit:

> **RETIREMENT ASSET.** Plaintiff should be awarded her community interest share of Defendant's eventual military retirement benefits. Her share of said benefit should be determined by the following formula:
>
> $$\frac{\text{Number of days of the marriage}}{\text{Number of days of Defendant's active duty}} \times \frac{1}{2} \times \quad \text{Net disposable retirement benefit}$$
>
> The Court should retain jurisdiction over this subject matter until such time as this asset is successfully allocated pursuant to a domestic relations or equivalent order, if necessary. The parties should be required to keep each other mutually current on mailing addresses so that they may smoothly effectuate the distribution of this asset promptly upon its inception. Defendant should be required to keep Plaintiff timely apprised of the effective date of his retirement from the military.

Bromund did not appear or plead in the matter and a default was entered against him on November 17, 2008. The magistrate court then entered a default judgment and decree of divorce ("2008 divorce decree") which adopted the proposed distribution of Bromund's eventual military retirement benefit in full, as set out in the complaint.

After his divorce, Bromund served active military duty until he retired on April 30, 2018. The following year, Bromund filed a motion with the magistrate court requesting an order clarifying the portion of his military retirement benefit subject to division. The foundational issue was what amount would be used as the "Net Disposable Retirement Benefit" in the formula laid out in the 2008 divorce decree. Bromund argued that under an amendment made to 10 U.S.C. section 1408 by the 2017 National Defense Authorization Act ("2017 NDAA"), the "accrued benefit method" applied, meaning the amount should be set at the value of the retirement benefit as of the date of divorce. Conversely, Henrickson argued that the "time rule" applied, meaning that the amount should be set at the total amount of the benefit as of the time of Bromund's actual retirement. The magistrate court applied the law in place at the time of the divorce decree and concluded based on the language of the decree that the parties intended to use the time rule.

2

Consequentially, the magistrate court entered an order directing the parties to divide Bromund's military retirement benefit as of the date of his retirement according to the formula set out in the 2008 divorce decree (the "2018 clarifying order").

On intermediate appeal, the district court concluded that the magistrate court erred in finding the parties had stipulated to the 2008 divorce decree. The district court noted that the decree had been entered by default, rather than stipulation, but determined the error was harmless. Reasoning that the 2017 NDAA amendment did not apply retroactively and that the law in existence at the time of the decree authorized use of the time rule, the district court ruled that the language in the 2008 divorce decree to that effect was controlling.

Bromund timely appealed.

## II. ISSUES ON APPEAL

1. Whether the district court erred in ruling that the 2017 NDAA amendment did not apply retroactively to the terms of the 2008 divorce decree.

2. Whether the district court erred in affirming the magistrate court's ruling that the language of the 2008 divorce decree dictated a division of benefits based on the time rule.

## III. STANDARD OF REVIEW

When reviewing the decision of a district court acting in its appellate capacity, this Court does not review the decision of the magistrate court. *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012). Rather, this Court is "procedurally bound to affirm or reverse the decisions of the district court." *Id.* (quoting *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009)). However, in so doing, this Court reviews the record before the magistrate court "to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings." *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008) (quoting *Nicholls v. Blaser*, 102 Idaho 559, 561, 633 P.2d 1137, 1139 (1981)). If the magistrate court's findings are supported by substantial and competent evidence "and the conclusions follow therefrom," this Court will affirm the district court's decision affirming the magistrate court "as a matter of procedure." *Id.*

"This Court freely reviews the interpretation of a statute and its application to the facts." *St. Luke's Reg'l Med. Ctr., Ltd. v. Board of Comm'rs of Ada Cnty.*, 146 Idaho 753, 755, 203 P.3d 683, 685 (2009) (citing *State v. Yzaguirre*, 144 Idaho 471, 474, 163 P.3d 1183, 1186 (2007)). The retroactive application of a statute is a question of statutory interpretation. *See State v.*

3

*Leary*, 160 Idaho 349, 352, 372 P.3d 404, 407 (2016) (interpreting a statute to determine whether it applied retroactively).

IV.       ANALYSIS

To begin, Bromund correctly argues that a military retirement benefit is divisible only to the extent permitted by federal law. The federal statutory scheme providing for military retirement benefits preempts the application of state community property laws to the extent those state laws would divide military retirement benefits on divorce. *McCarty v. McCarty*, 453 U.S. 210, 232–35 (1981); *see also Rice v. Rice*, 103 Idaho 85, 87, 645 P.2d 319, 321 (1982) (noting that, following *McCarty*, Idaho courts were "precluded from applying community property principles and dividing military retirement pay in divorce actions"), *overruled by Griggs v. Griggs*, 107 Idaho 123, 686 P.2d 68 (1984). Therefore, it is for Congress to decide the degree to which a state may apply community property laws to divide a military retirement benefit incident to divorce. *McCarty*, 453 U.S. at 235–36. To that end, Congress enacted the Uniformed Services Former Spouses' Protection Act ("USFSPA"), responding to the Supreme Court's decision in *McCarty*. *See Griggs*, 107 Idaho at 126, 686 P.2d at 71. That act authorized state courts to "treat disposable retired or retainer pay . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." *Id.* (citing Pub. L. No. 97-252, 96 Stat. 718, 730 (1982) (codified at 10 U.S.C. § 1408)). Thus, under 10 U.S.C. section 1408, Idaho's community property laws can be applied to divide a military retirement benefit following divorce. *See id.*

However, the question remains in this case whether the 2017 NDAA, which amended the definition of "disposable retired pay" in 10 U.S.C. section 1408, applies to the division of Bromund's military retirement in the 2008 divorce decree. And, as a corollary, if the 2017 NDAA amendment does not apply, whether the district court erred in affirming the magistrate court's ruling that Bromund's military retirement benefit should be divided according to the time rule based on the language of the 2008 divorce decree.

**A. The district court did not err in concluding that the 2017 NDAA amendment does not apply to the division of Bromund's military retirement.**

The district court determined that the 2017 NDAA amendment to 10 U.S.C. section 1408 did not apply to the division of Bromund's military retirement because the 2008 divorce decree was the order dividing the parties' community property and the plain language of the statute specifies that it cannot be retroactively applied. Bromund argues the district court erred in

4

reaching this conclusion because the language and legislative history of the statute make clear that 10 U.S.C. section 1408 only applies to final property settlements incident to divorces and the 2018 clarifying order is the final property settlement in this case. Accordingly, Bromund contends that retroactive application of the statute is not necessary since the 2018 clarifying order was entered after enactment of the 2017 NDAA.

Henrickson, in contrast, argues that the 2017 amendment by its plain language does not apply to divorce decrees entered before its enactment on December 23, 2016. She suggests that the language in the 2008 divorce decree applying the time rule method is controlling. The parties' arguments present two key sub-issues: first, to what court order does 10 U.S.C. section 1408 apply; and second, if the 2008 divorce decree is the relevant order, whether the 2017 amendment applies retroactively?

1. The 2008 divorce decree is the final division of property to which 10 U.S.C. section 1408 applies.

The threshold issue in this appeal is determining which order this Court should consider when applying 10 U.S.C. section 1408. Bromund argues that the 2018 clarifying order is the proper order to consider. Henrickson, on the other hand, argues that the 2008 divorce decree is the relevant order. We conclude that the 2008 divorce decree is the proper focus of our inquiry because the 2018 clarifying order was merely an order enforcing the 2008 divorce decree, which provided for the final and unmodified division of the parties' community property.

The goal of statutory interpretation is "to derive the intent of the legislative body that adopted the act." *State v. Owens*, 158 Idaho 1, 3, 343 P.3d 30, 32 (2015) (quoting *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013)). This process begins by looking to the plain language of the statute. *Id.* (citing *Dunlap*, 155 Idaho at 361, 313 P.3d at 17). "This Court considers the statute as a whole, and gives words their plain, usual, and ordinary meanings." *Id.* Where the language of a statute is unambiguous, this Court need not consider other rules of construction, and, instead, need only effectuate the expressed intent of the legislature. *Id.*

In relevant part, 10 U.S.C. section 1408, as amended by the 2017 NDAA, defines the disposable retired pay of a member,

> in the case of a division of property as part of a final decree of divorce, dissolution, annulment, or legal separation that becomes final prior to the date of a member's retirement, . . . [as] the amount of retired pay to which the member would have been entitled using the member's retired pay base and years of service on the date of the decree of divorce[.]

10 U.S.C. § 1408(a)(4)(B)(i). However, the language of the 2017 NDAA expressly provides for prospective application, stating:

> The amendments made [to 10 U.S.C. section 1408] shall apply with respect to any division of property as part of a final decree of divorce, dissolution, annulment, or legal separation involving a member of the Armed Forces to which section 1408 of title 10 . . . applies that *becomes final after the date of enactment of this Act.*

National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 641(b), 130 Stat. 2000, 2164 (Dec. 23, 2016) (emphasis added).

Bromund maintains that the statute does not need to be applied retroactively because the 2018 clarifying order is the relevant document to consider when applying 10 U.S.C. section 1408. To support this position, he points to the definition of "court order" in section 1408, which reads:

> (2) The term "court order" means a final decree of divorce, dissolution, annulment, or legal separation issued by a court, or a court ordered, ratified, or approved property settlement incident to such a decree (including a final decree modifying the terms of a previously issued decree of divorce, dissolution, annulment, or legal separation, or a court ordered, ratified, or approved property settlement incident to such previously issued decree) . . . which—
>
> (A) is issued in accordance with the laws of the jurisdiction of that court;
>
> (B) provides for—
>
> . . . .
>
>   (iii) division of property (including a division of community property); and
>
> (C) in the case of a division of property, specifically provides for the payment of an amount, expressed in dollars or as a percentage of disposable retired pay, from the disposable retired pay of a member to the spouse or former spouse of that member.

10 U.S.C. § 1408(a)(2). Bromund argues that this definition contemplates a multistep process beginning with a divorce decree and terminating with a final property settlement incident to that decree. And, under this interpretation, section 1408 applies only to the final property settlement. In this case, Bromund contends, the 2018 clarifying order is that final property settlement. We find Bromund's arguments unavailing.

The plain language of the statute dictates that it applies to "division[s] of property as part of a final decree of divorce." 10 U.S.C. § 1408(a)(4)(B). The only court order in this case dividing property is the 2008 divorce decree. The 2008 divorce decree was entered by default and Bromund never appealed or contested that decree. Idaho law is clear that "in the absence of

an appeal from an original decree of divorce the property division[] portions of that decree are final, *res judicata*, and no jurisdiction exists to modify property provisions of a divorce decree." *Borley v. Smith*, 149 Idaho 171, 178, 233 P.3d 102, 109 (2010) (quoting *McBride v. McBride*, 112 Idaho 959, 961, 739 P.2d 258, 260 (1987)). Thus, the only jurisdiction that remains for a magistrate court following a final divorce decree is to enforce the property division terms in the original decree. *See id.* Correspondingly, the 2008 divorce decree is the final and exclusive division of property in this case to which section 1408 applies. The 2018 clarifying order, to the extent it effectuates the division of Bromund's military retirement benefit, is only an order enforcing the terms of the 2008 divorce decree.

Further, Bromund's arguments concerning the definition of "court order" provided by 10 U.S.C. section 1408(a)(2) are inapplicable to this Court's interpretation of the definition of "disposable retired pay" provided by 10 U.S.C. section 1408(a)(4). Subsection (a)(2) defines the term "court order" as used elsewhere in the statute. 10 U.S.C. § 1408(a)(2) ("the term 'court order' means . . . ."). The 2017 NDAA amendment clarified the definition of "disposable retired pay" provided for in subsection (a)(4) with respect to "any division of property as part of a final decree of divorce, dissolution, annulment, or legal separation." *See* § 641(a), 130 Stat. at 2164. The term "court order" does not appear in the relevant text of subsection (a)(4).[1] *See* 10 U.S.C. § 1408(a)(4). So, even if Bromund's interpretation of the term "court order" is correct, that interpretation is immaterial to this Court's interpretation of the text of subsection (a)(4) because that term does not appear in that subsection.

Accordingly, we conclude that the 2008 divorce decree is the focal point of our analysis because the statute plainly and unambiguously applies to "division[s] of property as part of a final decree of divorce," and the 2008 divorce decree is the only document dividing property in this case.

2. The 2017 NDAA amendment does not apply retroactively.

Having concluded that the 2008 divorce decree is the final property division to which 10 U.S.C. section 1408 applies, we turn to the question of whether the 2017 NDAA amendment applies retroactively. The district court ruled that the express terms of the 2017 NDAA amendment preclude retroactive application and, accordingly, the amendment did not affect the

---

[1] The only use of the term "court order" in section 1408(a)(4) is in reference to a court order deducting retirement benefits under a separate chapter of the United States Code irrelevant to this matter. *See* 10 U.S.C. § 1408(a)(4)(A)(iv).

7

division of military retirement benefits made in the 2008 divorce decree. We affirm the decision of the district court.

The Supreme Court has articulated a two-part framework for evaluating the retroactivity of a federal statute. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994).

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.*

Here, Congress has expressly stated that the 2017 NDAA amendment only applies to property divisions incident to divorce decrees which become final after the date of its enactment. § 641(b), 130 Stat. at 2164. Thus, our inquiry with respect to retroactivity ends where Congress has unambiguously prescribed the "proper reach" of the 2017 amendment. *See Landgraf*, 511 U.S. at 280. And, since the 2008 divorce decree predates the enactment of the 2017 NDAA amendment, the 2017 NDAA amendment does not apply to the division of Bromund's military retirement benefit. As such, we affirm the decision of the district court in that regard.

**B. The district court correctly concluded that the magistrate court's finding that the 2008 divorce decree was stipulated to was harmless error.**

Bromund contends that the magistrate court erroneously ruled that the parties intended to use the time rule to divide his military retirement benefit because it mistakenly believed the 2008 divorce decree was stipulated to by the parties. The district court concluded this was a factual error, noting that the 2008 divorce decree was entered by default, but determined that the error was harmless because the uncontested terms of the decree used the time rule. We affirm the district court's decision.

During each stage of a proceeding, Idaho courts "must disregard all errors and defects that do not affect any party's substantial rights." I.R.C.P. 61. A right is substantial if it could affect the outcome of litigation. *Fonseca v. Corral Agric., Inc.*, 156 Idaho 142, 149, 321 P.3d 692, 699 (2014), *abrogated on other grounds by Sims v. Jacobson*, 157 Idaho 980, 342 P.3d 907 (2015).

8

Divorce decrees are interpreted according to the same rules of construction that apply to contract interpretation. *Toyama v. Toyama*, 129 Idaho 142, 144, 922 P.2d 1068, 1070 (1996) (citing *DeLancey v. DeLancey*, 110 Idaho 63, 65, 714 P.2d 32, 34 (1986)). Accordingly, analysis of the terms of a divorce decree always begins with the four corners of the document. *Borley v. Smith*, 149 Idaho 171, 177, 233 P.3d 102, 108 (2010). If the language of the decree is clear and unambiguous, the analysis comes to an end. *Id.*

Here, regardless of whether the 2008 divorce decree was characterized as the result of a stipulation or a default, the outcome of the case would be the same. The 2008 divorce decree dictates the formula by which Bromund's "*eventual* military retirement benefit" should be divided. The magistrate court incorrectly found that this language demonstrated the mutual intent of the parties to abide by the time rule in the division of Bromund's military retirement benefit. In contrast, the district court reasoned that the 2008 divorce decree could not demonstrate the mutual intent of the parties because it was entered by default rather than stipulation. Nonetheless, the district court concluded that this error was harmless because the effect of the controlling language in the 2008 decree was a division of Bromund's military retirement benefit according to the time rule. Further, despite being served with the divorce complaint, it does not appear in the record that Bromund ever took steps to object to the default proceedings nor to the default judgment, which adopted the language of the complaint in full. Therefore, we agree with the district court's conclusion that the magistrate court's error in characterizing the decree as stipulated to was harmless because the unambiguous and uncontested language in the 2008 divorce decree applied the time rule. Accordingly, we affirm the decision of the district court.

## C. Attorney's fees on appeal.

Henrickson requests attorney's fees on appeal "pursuant to Idaho Code § 12-121, Idaho Rules of Family Law Procedure 901-909, and all other applicable state law." Yet, Henrickson has not provided any argument nor authority to support this request.

A party seeking attorney's fees on appeal must state the basis for such an award. I.A.R. 35(a)(5), (b)(5). In addition, the party seeking fees must provide argument on the issue. I.A.R. 35(a)(6), (b)(6). "[A]bsent any legal analysis or argument, 'the mere reference to [a] request for attorney fees is not adequate.'" *Johnson v. Murphy*, 167 Idaho 167, 176, 468 P.3d 297, 306 (2020) (second alteration in original).

9

Here, Henrickson makes no argument as to why she should be awarded attorney's fees under Idaho Code section 12-121. Consequently, we decline to award Henrickson attorney's fees on appeal.

## V.	CONCLUSION

The decision of the district court, sitting in its appellate capacity, is affirmed. The 2017 NDAA amendment to 10 U.S.C. section 1408 does not apply retroactively to alter the division of Bromund's military retirement benefit laid out in the 2008 divorce decree. Further, the district court did not err in concluding that the magistrate court's mischaracterization of the 2008 divorce decree was harmless error because it did not impact the outcome of litigation. We award costs to Henrickson on appeal but decline to award attorney's fees.

Justices BRODY, BEVAN, STEGNER, and MOELLER **CONCUR.**