**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 49916**

| | | |
|---|---|---|
| DIANE LANDS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, February 2024 Term |
| | ) | |
| v. | ) | Opinion Filed: April 10, 2024 |
| | ) | |
| SUNSET MANOR, LP; BINGHAM COUNTY | ) | Melanie Gagnepain, Clerk |
| SENIOR CITIZENS CENTER, INC., | ) | |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bingham County. Darren B. Simpson, District Judge.

The decisions of the district court are <u>affirmed</u>.

Browning Law, Idaho Falls, for Appellant Diane Lands. Allen H. Browning argued.

Farm Bureau Mutual Insurance Company of Idaho, Pocatello, for Respondents Sunset Manor, LP, and Bingham County Senior Citizens Center, Inc. R. William Hancock argued.

_____

BRODY, Justice.

This appeal concerns the district court's decisions to exclude expert testimony for violations of scheduling order deadlines and to include a jury instruction limiting the time period for which non-economic damages could be recovered because the plaintiff did not have expert testimony. For the reasons set forth below, we affirm the decisions of the district court.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

On August 9, 2017, Diane Lands tripped on an uneven sidewalk outside the Sunset Manor apartment building where she lived. She hit her chin and lost consciousness. Thereafter, Lands filed a premises liability claim against the Bingham County Senior Citizens Center, the owner of the building, and Sunset Manor, LP, the operator of the business. She alleged that she suffered a right tentorial subdural hematoma, a concussion, post-concussive syndrome, headaches, chin pain, dizziness, and short-term memory loss as a result of her fall, and that she continued to suffer

dizziness and confusion. Her complaint sought damages for past and future medical expenses, non-economic damages, and other losses.

Sunset Manor filed an answer and served its first set of interrogatories on June 25, 2019. Interrogatory No. 2 requested that Lands disclose the identities of "all witnesses" she intended to call at the trial. Concerning expert witnesses, Interrogatory No. 3 requested the identity of any person Lands "consulted with or engaged . . . in the capacity of an expert witness in connection with this litigation," and Interrogatory No. 4 requested the identity of any person Lands solicited, or who had already provided, "an expert opinion regarding any matter relating to this litigation[.]" In response to Interrogatory No. 2, Lands identified herself, Kevin King (Lands' boyfriend and an eyewitness of her fall at Sunset Manor), and Bishop Spencer. In response to Interrogatory Nos. 3 and 4, Lands identified the following healthcare providers who provided treatment to Lands: (1) Dr. Lance Wehrle, (2) Heather Schaper, PA-C, (3) Dr. Clark Allen, (4) Dr. D. Andrew Garrity, (5) Samantha Power, RN, (6) Amber Evans, RN, (7) Dr. Shawn Ostler, (8) Scott Tweedy, Advance EMT, and (9) Michael Gardner, EMT (collectively "Medical Care Providers"). For each request, Lands stated she "reserve[d] the right to supplement [her answers] according to the Idaho Rules of Civil Procedure."

Thereafter, the district court issued a scheduling order setting a trial date of July 21, 2020, and a pretrial conference date of June 22, 2020. Among its other provisions, the scheduling order required Lands to disclose "all expert witnesses in the manner outlined in Rule 26(b)(4)(A)(i) of the Idaho Rules of Civil Procedure"—the rule which sets disclosure requirements for retained experts—"no later than ninety (90) days before the Pre-Trial Conference[,]" which fell on March 24, 2020:

C. Discovery Procedures and Deadlines.

1. **Discovery cutoff shall be one (1) week prior to the scheduled Pre-Trial Conference. Counsel are advised that this cutoff means that *ALL* discovery shall be *COMPLETE* by that deadline**.

2. **Fact Witnesses**: Plaintiff shall disclose the names and addresses of all fact witnesses which Plaintiff will call to testify at trial, except for impeachment witnesses, **ninety (90) days before the Pre-Trial Conference**. Defendant shall disclose the names and addresses of all fact witnesses which Defendant will call to testify at trial, except for impeachment witnesses, **sixty (60) days before the Pre-Trial Conference**.

3. **Expert Witnesses:** Plaintiff shall disclose the names and addresses of all expert witnesses in the manner outlined in Rule 26(b)(4)(A)(i) of the Idaho

Rules of Civil Procedure, including the person expected to be called as an expert witness, the subject matter on which the expert is expected to testify, and the underlying facts and data upon which the expert opinion is based, no later than **ninety (90) days before the Pre-Trial Conference.** Defendant shall also comply with Rule 26(b)(4)(A)(i) of the Idaho Rules of Civil Procedure and shall make a similar disclosure of expert witnesses no later than **sixty (60) days before Pre-Trial Conference**.

4. Witnesses not disclosed in this manner shall be subject to exclusion at trial.

5. Any witnesses discovered after the last required disclosure shall immediately be disclosed to the [c]ourt and opposing counsel by filing and service stating the date upon which the same was discovered.

(Emphasis in original.)

Five days before the March 24, 2020, expert witness disclosure deadline, Lands filed a motion to vacate the July 21, 2020, trial date. Lands explained that she "display[ed] signs of traumatic brain injury" and had an appointment with a neuropsychologist scheduled in April 2020. She further explained that she could not get an appointment scheduled prior to the March 24, 2020, deadline to disclose her expert witnesses. Thereafter, on March 24, 2020, Lands filed her fact and expert witness disclosure which listed, among others, Kevin King as a potential fact witness and Dr. Carol Anderson, the neuropsychologist she was scheduled to meet in April, as a potential retained expert witness. Lands also listed the Medical Care Providers as non-retained expert witnesses.

Lands' motion to vacate the trial was not scheduled for hearing or decided by the district court. Instead, on May 5, 2020, the district court *sua sponte* vacated the pretrial conference and trial date in response to this Court's order prohibiting civil jury trials due to the COVID-19 pandemic (hereafter "Order to Vacate"):

IT IS ORDERED that the Pre Trial Conference presently set in the above-entitled matter on June 22, 2020 and the Jury Trial presently set on July 21, 2020 through July 24, 2020, are vacated.

IT IS FURTHER ORDERED, that no previously set deadlines or scheduling deadlines are extended.

At a scheduling conference held two weeks later, the district court reset the jury trial to commence on February 2, 2021, and the pretrial conference for January 18, 2021. When Sunset Manor pointed out during the conference that Lands had a pending motion requesting additional time to disclose expert witnesses, the district court informed the parties that "in my response to these continuances that have been scheduled already, I'm not extending deadlines unless there's a

stipulation to it . . . ." Sunset Manor refused to stipulate to an extension, asserting that there was no justification for Lands' failure to obtain an opinion from a neuropsychologist earlier. At the close of the conference, the district court again reiterated that it was not extending deadlines without a stipulation by the parties and noted that, if the parties could not reach an agreement and felt a motion was appropriate, then a hearing could be scheduled.

Five months later, on October 20, 2020, Lands filed a supplemental fact and expert witness disclosure which listed eleven new, non-retained expert witnesses. This included Kurt Hibbert and Kevin King (who had previously been disclosed as a fact witness), whom Lands intended to call to testify concerning an allegation that the sidewalk where she tripped did not comply with applicable code.

Lands subsequently filed a motion to clarify whether these newly disclosed experts would be permitted to testify at trial. Lands argued that her disclosure was timely because her discovery deadlines were tethered to the rescheduled jury trial and pretrial conference dates. The district court held that the disclosure was untimely and denied that motion, noting that "Lands was informed, both in writing and in court, that the discovery deadlines would not be extended despite the rescheduling of the jury trial[,]" and that Lands "offer[ed] no reason why her delay in naming eleven (11) additional non-retained expert witnesses is substantially justified." Lands moved for reconsideration, arguing that the district court erred because (1) she did not have notice of the discovery deadlines as "the [c]ourt moved the trial date *sua sponte* and failed to issue a revised order" listing the changed dates, (2) the order vacating trial had "absolutely no effect without a revised scheduling order reflecting a change in the intent of [c]ourt[,]" and (3) the scheduling order did not address deadlines for non-retained expert witness disclosures. The district court rejected these arguments and denied Lands' motion.

Thereafter, the jury trial was again postponed due to the COVID-19 pandemic and a final trial date was set for May 10, 2022, with a pretrial conference date set for April 11, 2022. Lands filed a new motion to clarify which of her witnesses the court would allow to testify at the upcoming trial. The district court clarified that it was prohibiting any witness from testifying who was not "properly" disclosed by the March 24, 2020, deadline. This included: (1) Dr. Anderson, the neuropsychologist whom Lands disclosed as a retained expert witness on March 24, 2020, because Lands failed to timely disclose Dr. Anderson's opinions until June 15, 2020; (2) Kurt Hibbert,  because he was not disclosed as a non-retained expert until October 20, 2020; (3) expert

4

testimony from Kevin King because he was not disclosed as a non-retained expert until October 20, 2020; and (4) Lands' Medical Care Providers, who were previously disclosed as non-retained witnesses on August 8, 2019, and March 24, 2020, because she did not disclose the Rule 26(b)(4)(A)(i) information for these non-retained witnesses. However, the district court later permitted redacted video depositions of Dr. Ostler and Dr. Garrity, two of Lands' treating physicians, to be published to the jury after Sunset Manor withdrew its objections.

The matter proceeded to a three-day jury trial on May 10, 2022. Pertinent to this appeal, an issue arose concerning Lands' alleged on-going injuries and the lack of expert medical testimony on the cause of those injuries. Lands and King testified that Lands continued to suffer from short-term memory loss and dizziness five years after the fall. When discussing her short-term memory loss on cross-examination, however, Lands testified that her memory issues were caused by both the tripping incident and her old age:

| [Counsel:] | You've testified here today, ma'am, that you're suffering from memory issues as a result of the tripping incident that you allege happened on August 7, 2017. Is that correct? |
|---|---|
| [Lands:] | Yes. That and old age. |
| [Counsel:] | Pardon me? |
| [Lands:] | The fall and old age. |
| [Counsel:] | What do you mean by that? |
| [Lands:] | When you get older, you forget things. |
| [Counsel:] | So were you experiencing any memory problems prior to August 7, 2017? |
| [Lands:] | No. |
| [Counsel:] | Or August 9 of 2017? |
| [Lands:] | No. |
| [Counsel:] | And so it's your testimony that you had absolutely no memory problems prior to August 9, 2017. Is that correct? |
| [Lands:] | I've had memory lapses, like any normal person would have. Forget -- you put something someplace so you don't forget where it's at, and you forget where you put it. Just the normal thing. |

Later, Lands read deposition testimony to the jury which indicated that she attributed her short-term memory loss to old age. The following exchange occurred:

5

[Counsel:]     "Okay. Other than losing your memory [during her time at the hospital], have you suffered any memory loss as a result of this trip-and-fall accident?"

And your answer was?

. . . .

[Lands:]     "No, I just contribute it to being old age."

. . . .

[Counsel:]      Okay. "Question: . . . [A]re you claiming any mental deficits or difficulties as it relates to this?"

And what was your answer, ma'am?

[Lands:]     "Well, again, I don't know if it is from old age or if it's from the accident. But since the accident, I go to -- go to stand up, and I -- to stand and hold something on the side so I -- something -- and wait for a few minutes before I take my first step."

In lieu of live testimony at trial, video depositions of Dr. Andrew Garrity and Dr. Shawn Ostler were played for the jury, which recounted their treatment of Lands following the tripping incident. However, neither medical expert opined on the medical cause of Lands' continued short-term memory loss or dizziness.

Sunset Manor subsequently moved to preclude Lands from arguing for non-economic damages beyond her initial treatment because she could not establish that her continued short-term memory loss, dizziness, or any other injuries were caused by the tripping incident without expert medical testimony. In response, Lands clarified that she was only seeking future non-economic damages based on her loss of short-term memory, stating:

She's had that loss of short-term memory consistent from the time of the accident, on August 9th, 2017, through the present, with no indication that there's -- that it's resolving. . . .

And so we are asking for future pain and suffering damages as to that one element. And we've gotten rid of everything else because, frankly, the evidence didn't support it, and we're talking about like headaches, you know, headaches resolved. We're foregoing dizziness because there's evidence that she had that condition beforehand and we don't want to get into that.

So I'm just limiting it to the one item, and that's the loss of short-term memory.

Lands then argued that her lay testimony was sufficient to establish causation for her continued short-term memory loss because she had no prior record of this condition before the tripping incident and because the condition arose immediately after the fall. The district court rejected

6

Lands' argument, noting (1) the medical cause of short-term memory loss, as well as its potential duration and effects, was "well beyond a lay person's knowledge[,]" and (2) the jury would be unable to reach a determination concerning the medical cause of Lands' short-term memory loss without speculating because Lands herself had testified that her short-term memory loss was caused by the tripping accident *and* old age. Accordingly, the district court held that expert medical testimony was necessary to sustain Lands' claim for non-economic damages beyond the time of her last medical treatment. Thereafter, the district court issued Jury Instruction Number 21, which limited the period of time for which non-economic damages could be considered by the jury:

> If you decide the plaintiff is entitled to recover from the defendants, you must determine the amount of money that will reasonably and fairly compensate the plaintiff for any damages proved to be proximately caused by the defendants' negligence.
>
> The elements of damage you may consider are:

   A.   Non-economic damages

       l.     The nature of the injuries;

       2.     *The physical and mental pain and suffering from August 9, 2017 through September 28, 2017*;

       3.     The impairment of abilities to perform usual activities;

       4.     The aggravation caused to any preexisting condition.

(Italics added.) The jury entered a verdict finding that (1) Lands suffered $5,528.65 in economic damages from the incident, and (2) Sunset Manor was 51% at fault and Lands was 49% at fault. The jury did not award any non-economic damages. Lands timely appealed.

## II.   STANDARDS OF REVIEW

"The decision of whether to impose sanctions for violating a scheduling order 'is within the district court's discretion . . . and we will not overturn such a decision absent a manifest abuse of that discretion.' " *Krinitt v. Idaho Dep't of Fish & Game*, 162 Idaho 425, 430, 398 P.3d 158, 163 (2017) (quoting *Lepper v. E. Idaho Health Servs., Inc.*, 160 Idaho 104, 109, 369 P.3d 882, 887 (2016)). A trial court does not abuse its discretion if it: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

"Whether a jury instruction is correct 'is a question of law over which this Court exercises free review, and the standard of review of whether a jury instruction should or should not have

been given, is whether there is evidence at trial to support the instruction.' " *Secol v. Fall River Med., P.L.L.C.*, 168 Idaho 339, 355, 483 P.3d 396, 412 (2021) (quoting *Smith v. Mitton*, 140 Idaho 893, 899, 104 P.3d 367, 373 (2004)).

### III.  ANALYSIS

**A. The district court did not abuse its discretion by excluding Dr. Carol Anderson or certain non-retained experts from testifying at trial.**

The district court excluded expert testimony from Dr. Anderson because Lands failed to make her Rule 26(b)(4)(A)(i) disclosure of Dr. Anderson's opinions by March 24, 2020. The district court further excluded the expert testimony from the non-retained expert witnesses Lands disclosed on October 20, 2020, including Hibbert and King, because the disclosure occurred after the March 24, 2020, witness disclosure deadline and the June 15, 2020, discovery "cut-off." Lands contends that the district court made two errors by excluding her expert witnesses. First, Lands argues that her disclosure deadlines were automatically extended by the plain language of the scheduling order because the deadlines were set relative to the pretrial conference date as opposed to a fixed calendar date. Second, Lands argues that the district court erroneously interpreted its scheduling order to require non-retained experts, such as Hibbert and King, to be disclosed at the same time and in the same manner as retained experts because the order did not set a deadline to disclose non-retained experts. Each argument is addressed in turn.

*1. Lands' disclosure deadlines were not automatically extended by the postponement and rescheduling of the pretrial conference and jury trial.*

To determine whether the district court abused its discretion in excluding Lands' expert witnesses from trial, the Court must first determine whether a discovery violation occurred. *Easterling v. Kendall*, 159 Idaho 902, 909, 367 P.3d 1214, 1221 (2016) (citation omitted). We begin with the well understood proposition that "Idaho trial courts are expected to effectively and actively manage discovery to achieve the purposes of the discovery rules and to reach a 'just, speedy, and inexpensive' determination of the issues." *Edmunds v. Kraner*, 142 Idaho 867, 878, 136 P.3d 338, 349 (2006); *see also Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 45 (1st Cir. 2002) ("In an era of burgeoning case loads and [crowded] dockets, effective case management has become an essential tool for handling civil litigation."). To that end, Rule 16(a) of the Idaho Rules of Civil Procedure requires trial courts to fashion scheduling orders during the early stage of litigation which establish timetables and deadlines for parties to complete certain pretrial activities, such as expert witness disclosures and discovery. I.R.C.P 16(a)(2)(B). These deadlines

8

"must not be modified except by leave of the court on a showing of good cause or by stipulation of all the parties and approval of the court." I.R.C.P. 16(a)(3). Rule 16(e) further grants the trial court "authority to sanction parties for non-compliance with scheduling orders, including prohibiting parties from introducing untimely disclosed evidence." *Easterling*, 159 Idaho at 910, 367 P.3d at 1222 (citations omitted); *see also* I.R.C.P. 37(b)(2)(a). "It is within the district court's discretion whether to impose such sanctions . . . ." *Lepper*, 160 Idaho at 109, 369 P.3d at 887.

The district court in this case issued a scheduling order pursuant to Rule 16, which provided, among other things, a deadline for the disclosure of expert witnesses and the information that was required to be disclosed and a deadline for completing discovery. The scheduling order did not, however, expressly list the dates for these deadlines. Instead, these deadlines were relative to the pretrial conference date:

C. Discovery Procedures and Deadlines.

1. **Discovery cutoff shall be one (1) week prior to the scheduled Pre-Trial Conference. Counsel are advised that this cutoff means that *ALL* discovery shall be *COMPLETE* by that deadline.**

. . . .

3. **Expert Witnesses**: Plaintiff shall disclose the names and addresses of all expert witnesses in the manner outlined in Rule 26(b)(4)(A)(i) of the Idaho Rules of Civil Procedure, including the person expected to be called as an expert witness, the subject matter on which the expert is expected to testify, and the underlying facts and data upon which the expert opinion is based, no later than **ninety (90) days before the Pre-Trial Conference**. . . .

4. Witnesses not disclosed in this manner shall be subject to exclusion at trial.

(Emphasis in original.) Because the pretrial conference date was set for June 22, 2020, Lands' deadline to disclose her expert witnesses and their opinions fell on March 24, 2020, and the parties' deadline to complete all discovery fell on June 15, 2020.

Lands does not dispute that she was subject to the March 24, 2020, expert witness disclosure deadline when the scheduling order was entered on August 20, 2019. Nor does she argue that good cause justified her failure to disclose her experts or their opinions by this deadline. Instead, Lands contends that her deadlines were automatically extended when the trial and pretrial conference were vacated because the plain language of the scheduling order set her deadlines relative to the pretrial conference date, and the "[d]istrict [c]ourt fully contemplated that those dates would move with the trial date." Thus, Lands argues her disclosure of Dr. Anderson's opinion on June 15,

9

2020, and disclosure of Hibbert and King as non-retained witnesses on October 20, 2020, were timely because the pretrial conference did not occur until 2022.

The district court rejected Lands' argument for two reasons. First, the district court noted that "Lands was informed," both in the district court's order vacating trial and during the May 18, 2020, status conference, "that the discovery deadlines would not be extended despite the rescheduling of the jury trial." Second, the district court concluded that "[n]othing in the *Scheduling Order* attests that witness disclosure deadlines move with the trial dates" and "pursuant to [Rule 16(a)(3) of] the Idaho Rules of Civil Procedure, the dates for completing discovery must not be modified from the [c]ourt's scheduling order except by leave of court on a showing of good cause, or by stipulation of the parties with the court's approval[,]" which did not occur. (Emphasis in original.) We agree with the district court's analysis.

To begin, it is important to understand the way in which discovery proceeded in this case. As noted above, the district court issued a scheduling order on August 19, 2019, which: (1) set a pretrial conference for June 22, 2020, (2) required Lands to disclose her expert witnesses and their opinions ninety days prior to the pretrial conference, or March 24, 2020, and (3) further required the parties to complete all discovery one week prior to "the scheduled Pre-Trial Conference[,]" or June 15, 2020. Forty-two days after Lands' expert witness disclosure deadline had passed, the district court issued its order vacating the pretrial conference and trial setting on May 5, 2020, which warned the parties "that no previously set deadlines or scheduling deadlines are extended." The district court further reiterated to the parties during the May 18, 2020, scheduling conference that "in my response to these continuances that have been scheduled already, I'm not extending deadlines unless there's a stipulation to it . . ." and noted that, if the parties could not reach an agreement and felt a motion was appropriate, then a hearing could be scheduled. Sunset Manor, however, refused to stipulate to an extension and Lands did not file a motion to extend her deadlines after the status conference.

In light of the forgoing, we are unpersuaded by Lands' argument that her discovery deadlines were extended when the district court postponed the pretrial conference and trial setting for two reasons. First, as the district court determined, "[n]othing in the *Scheduling Order* attests that witness disclosure deadlines move with the trial dates." The scheduling order "announced the original trial and pre-trial conference dates" and "[a]ll discovery deadlines were calculated using those trial and pre-trial dates as the reference points." Lands does not cite any authority to support her contention that her discovery deadlines automatically shifted if these initial dates, or "reference points," were vacated. Instead, to modify the discovery deadlines set forth by the scheduling order, Lands was

10

required to seek "leave of the court on a showing of good cause or by stipulation of all the parties and approval of the court." I.R.C.P. 16(a)(3). Second, the plain language of the scheduling order, read together with district court's order vacating the trial setting, unambiguously informed Lands that "no previously set deadlines or scheduling deadlines are extended." Because Lands' deadlines were set by the scheduling order when it was issued on August 19, 2019, the deadlines were "previously set" as contemplated by the order vacating trial, and, therefore, were not extended by the order.

Lands cites to this Court's decision in *Lepper*, 160 Idaho at 109, 369 P.3d at 887, to support her contention that the order vacating trial "should have absolutely no effect without a revised scheduling order reflecting a change in the intent of [the] [c]ourt and the changes to the [c]ourt's Rule 16 Scheduling Order." Lands' reliance on *Lepper* is misplaced. In *Lepper*, this Court determined that a district court abused its discretion when it imposed discovery sanctions on a party for failing to disclose information which was not specifically required by its scheduling order in a medical malpractice case. *Id.* at 112, 369 P.3d at 890. There, the district court's scheduling order stated: "Plaintiffs' expert witness disclosure, including opinions and conclusions must be filed on or before October 30, 2013." *Id.* The plaintiffs had disclosed their standard of care expert witnesses prior to the district court's deadline, along with expert's opinions and conclusions. *Id.* However, the district court excluded the affidavits after determining that the "foundational requirements of Idaho Code sections 6-1012 and 6-1013 must be included in the disclosure of the experts' opinions and conclusions" and that "the expert witness disclosures made no mention of familiarity with the applicable standard of care." *Id.* at 106, 109, 369 P.3d at 884, 887.

On appeal, this Court held that the district court abused its discretion in excluding the affidavit because (1) the district court erred in determining that the foundational requirements of Idaho Code sections 6-1012 and 6-1013 applied to the expert witness disclosure requirements, and (2) the district court erred when it "made the inferential leap that 'opinions and conclusions' [as required by the court's scheduling order] necessarily included all foundational facts, including the standard of care." *Id.* at 112, 369 P.3d at 890. "[B]ecause the district court read requirements into its Scheduling Order that did not appear on the face of the order," this Court held that the district "court abused its discretion in excluding" the experts. *Id.*

The facts in *Lepper* are distinguishable from the facts of this case. The district court in *Lepper* did not issue a subsequent order modifying the discovery deadlines in its scheduling order.

11

Instead, the district court in *Lepper* sanctioned a party for violating a disclosure requirement that "they had no prior notice of." *Id*. Here, Lands does not allege that she did not have prior notice of the expert witness disclosure deadline when the scheduling order was issued. Instead, she asserts that "[t]he [d]istrict [c]ourt fully contemplated that [the discovery deadlines] would move with the trial date[,]" and that she believed her October 20, 2020, disclosure was timely. This assertion rings hollow because, as the district court noted, "Lands was informed, both in writing and in court, that the discovery deadlines would not be extended despite the rescheduling of the jury trial." Thus, unlike the plaintiffs in *Lepper*, Lands had notice of her disclosure requirements. Furthermore, nothing in *Lepper* required the district court to issue a revised scheduling order reflecting the changes in the pretrial conference and trial dates. *Lepper* stands for the principle that district courts cannot revise a scheduling order by reading additional requirements into the order, not that a district court must issue an entirely new scheduling order each time there is a modification of the trial date. In this case, the district court did not read additional requirements into its order; rather, it issued a written order postponing the pretrial conference and trial dates and unambiguously notified the parties "that no previously set deadlines or scheduling deadlines are extended."

In short, we conclude that the district court did not err in determining that Lands' expert witness disclosure deadline was not extended when the pretrial conference and trial dates were vacated. Therefore, the district court did not err by excluding Dr. Anderson from testifying at trial because Lands failed to make her Rule 26(b)(4)(A)(i) disclosure of Dr. Anderson's opinions by March 24, 2020.

2. *Any error in the district court's interpretation of the disclosure requirement for non-retained witnesses under the scheduling order is harmless.*

We next turn to Lands' argument that the district court erroneously interpreted its scheduling order to require non-retained experts, such as Hibbert and King, to be disclosed at the same time and in the same manner as retained experts under Rule 26(b)(4)(A)(i). Rule 26 of the Idaho Rules of Civil Procedure governs expert witness disclosures. The rule does not impose an automatic disclosure requirement, but instead provides that the disclosures must be made when requested either by interrogatory or when required by court order. *Lepper*, 160 Idaho at 110, 369 P.3d at 888. The rule divides expert witnesses into two categories with different disclosure requirements:

> The first category is for retained experts and requires "a complete statement of all opinions to be expressed and the basis and reasons for the opinion." I.R.C.P.

12

26(b)(4)(A)(i). The second category is non-retained experts. For such witnesses, the rule requires a party to disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." I.R.C.P. 26(b)(4)(A)(ii).

*Herrett v. St. Luke's Magic Valley Reg'l Med. Ctr., Ltd.*, 164 Idaho 129, 133, 426 P.3d 480, 484 (2018) (quoting I.R.C.P. 26(b)(4)(A) advisory committee's note of Jan. 28, 2014). Here, the scheduling order did not distinguish between the disclosure requirements for retained and non-retained experts. As stated above, the scheduling order required Lands to "disclose the names and addresses of all expert witnesses in the manner outlined in Rule 26(b)(4)(A)(i) of the Idaho Rules of Civil Procedure . . . ." That rule only pertains to the disclosure of retained experts. Nevertheless, the district court determined that the scheduling order required Lands to disclose her non-retained experts at the same time and in the same manner outlined in Rule 26(b)(4)(A)(i). Because this rule addresses only the disclosure requirements for *retained* experts, Lands' contention that the order failed to clearly state her disclosure requirements for non-retained experts is well taken, as the order lacked sufficient specificity to sustain a discovery sanction on this basis. Thus, the district court erred by excluding Lands' non-expert witnesses based on a perceived violation of the scheduling order. However, we decline to reverse the district court's exclusion of Lands' non-retained experts on this basis for the reasons set forth below.

Idaho Rule of Civil Procedure 26(e) requires parties to timely supplement their discovery responses concerning "the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony." I.C.R.P. 26(e)(2). "The court may exclude the testimony of any witness or the admission of evidence not disclosed by a supplementation required by this rule." I.R.C.P. 26(e)(3). On June 25, 2019, Sunset Manor served its first set of interrogatories seeking the identities of "all witnesses" Lands intended to call at trial and information pertaining to expert witnesses that Lands could potentially call at trial. On August 8, 2019, Lands responded by identifying as non-retained expert witnesses, among others, the Medical Care Providers who treated Lands. However, Lands did not list Hibbert or King as non-retained expert witnesses in response to the interrogatories or in her March 24, 2020, fact and expert witness disclosure. Nor did she supplement her response, as required by Rule 26(e)(2), prior to the June 15, 2020, discovery completion deadline. Instead, Lands disclosed Hibbert and King as non-retained experts roughly five months after the discovery deadline had passed. As the district court noted, even if the disclosure requirements for non-

13

retained experts were ambiguous, the scheduling order's deadline for completing discovery was not. Accordingly, the district court did not err by excluding expert testimony from Hibbert and King because Lands' October 10, 2020, disclosure was untimely.

This leaves the remaining non-retained experts that were timely disclosed on August 8, 2019. With the exception of video depositions of Dr. Garrity and Dr. Ostler, the district court excluded testimony from Land's Medical Care Providers based on her failure to disclose these non-retained expert witnesses at the same time and in the same manner as retained experts under Rule 26(b)(4)(A)(i). As discussed above, this provision of the scheduling order lacks sufficient specificity to sustain a discovery sanction; thus, the district court erred by excluding the Medical Care Providers on this basis. Nevertheless, we decline to reverse the district court's decision because Lands has not demonstrated that a substantial right was affected by the exclusion of the Medical Care Providers.

"On appeal, it is not sufficient simply to show error. A party alleging error must also show that the error affected the party's substantial rights." *Reed v. Reed*, 160 Idaho 772, 775, 379 P.3d 1042, 1045 (2016). Indeed, Idaho Rule of Civil Procedure 61 provides that, "[a]t every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." I.R.C.P. 61. "A right is substantial if it could affect the outcome of litigation." *Martinez v. Carretero*, 173 Idaho 87, ___, 539 P.3d 565, 576 (2023) (quoting *Bromund v. Bromund*, 167 Idaho 925, 932, 477 P.3d 979, 986 (2020)). "[B]ecause an appellant can only prevail if the claimed error affected a substantial right, the appellant must present some argument that a substantial right was implicated." *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 18, 278 P.3d 415, 420 (2012).

Lands only *marginally* presents an argument that the exclusion of the Medical Care Providers affected her substantial rights. In her opening brief, Lands contends, in a conclusory fashion, the exclusion of her non-retained experts was "highly prejudicial" because the testimony "would have [a]ffected damages as well as liability and comparative negligence findings by the jury." This argument, however, suffers from a lack of specificity. Lands fails to elaborate as to *how* the testimony of the excluded Medical Care Providers would have influenced the jury's verdict. Lands states that, "[b]y excluding [Lands'] doctors, except [Dr. Garrity and Dr. Ostler] who only saw her briefly on the date of her injury, the jury was not allowed to hear the extent of [Lands'] injuries from any of her treating physicians." However, Lands does not specify what

14

information (regarding Lands' injuries) was omitted by Dr. Garrity and Dr. Ostler in their video depositions or Lands' medical records. Consequently, this Court is left to speculate as to whether the excluded testimony from the Medical Care Providers would have influenced the jury's verdict—which we will not do. Therefore, we hold that Lands failed to demonstrate that a substantial right was violated by the district court's error.

For these reasons, we conclude that the district court did not abuse its discretion when it precluded Hibbert and King from testifying as experts at trial based on Lands' untimely disclosures and we will disregard any error in precluding the other Medical Care Providers from testifying.

**B. The district court did not err by giving a jury instruction that limited Lands' non-economic damages to the period of August 9, 2017, to September 28, 2017.**

Lands challenges the district court's decision to issue Jury Instruction Number 21, which instructed the jury on non-economic damages. Specifically, Lands contends that the district court abused its discretion by instructing the jury to only consider "[t]he physical and mental pain and suffering from August 9, 2017 through September 28, 2017[,]" because she was capable of telling the jury that she continued to suffer from short-term memory loss after her last doctor's appointment.

At trial, Lands' counsel clarified that her claim for future non-economic damages was solely based on her alleged on-going short-term memory loss following the accident:

> And so we are asking for future pain and suffering damages as to that one element. And we've gotten rid of everything else because, frankly, the evidence didn't support it, and we're talking about like headaches, you know, headaches resolved. We're foregoing dizziness because there's evidence that she had that condition beforehand and we don't want to get into that.
>
> So I'm just limiting it to the one item, and that's the loss of short-term memory.

The district court determined that Lands was not entitled to damages on this basis because Lands testified multiple times that she did not know whether her short-term memory loss was a result of the fall or her "old age." The district court explained that, without expert medical testimony to establish whether ongoing short-term memory loss was solely and proximately related to the incident, allowing the jury to reach a verdict on Lands' claim of ongoing injury would require the jury to speculate as to the cause of Lands' alleged, ongoing short-term memory loss.

Initially, we note that the district court's decision to give Jury Instruction Number 21 was, in essence, a partial directed verdict on Lands' claim for non-economic damages following

15

September 28, 2017, because it prevented the matter from being submitted to the jury. "Whether a verdict should be directed 'is purely a question of law and on those questions, the parties are entitled to full review by the appellate court without special deference to the views of the trial court.' " *Ackerschott v. Mountain View Hosp., LLC*, 166 Idaho 223, 229–30, 457 P.3d 875, 881–82 (2020) (quoting *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986)). In reviewing a decision to issue a directed verdict, we must determine whether the evidence admitted at trial was of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the non-moving party is proper; if so, the motion must be denied:

In reviewing the record, we determine

> whether there was sufficient evidence to justify submitting the claim to the jury, viewing as true all adverse evidence and drawing every legitimate inference in favor of the party opposing the motion for a directed verdict. This test does not require the evidence be uncontradicted, but only that it be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper. Where a non-moving party produces sufficient evidence from which reasonable minds could find in its favor, a motion for directed verdict should be denied.

*Id*. at 230, 457 P.3d at 882 (quoting *Alexander v. Stibal*, 161 Idaho 253, 259, 385 P.3d 431, 437 (2016)). Reviewing the record against this standard, we conclude there was no error in the district court's decision to limit Lands' non-economic damages claim.

Generally, "a court should disregard lay opinion testimony relating to the cause of a medical condition, as a lay witness is not competent to testify to such matters." *Bloching v. Albertson's, Inc.*, 129 Idaho 844, 846, 934 P.2d 17, 19 (1997) (citing *Evans v. Twin Falls County*, 118 Idaho 210, 214, 796 P.2d 87, 91 (1990)).

> [W]here the subject matter regarding the cause of disease, injury, or death of a person is wholly scientific or so far removed from the usual and ordinary experience of the average person that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the cause of death, disease or physical condition.

*Holdaway v. Broulim's Supermarket*, 158 Idaho 606, 612, 349 P.3d 1197, 1203 (2015) (quoting *Evans*, 118 Idaho at 214, 796 P.2d at 91). However, when an injury is of a "common nature" and arises from a "readily identifiable cause," expert testimony is not required:

> For example, if a person fell down some steps, landing on a knee, and immediately thereafter felt pain in the knee, saw an open wound on the knee, and within minutes

16

or hours observed that the knee was swelling, that layperson could provide reliable testimony that the pain, wound and swelling were caused by the fall. A layperson could also testify that medical care obtained to treat those immediate symptoms was causally related to the fall. As the claimed symptoms and treatment become more separated in time from the fall, however, the causal relationship becomes more doubtful and tenuous, and expert testimony becomes necessary to establish causation. As time passes, the possibility that prior or subsequent injuries or unrelated disease processes may play a causal role makes lay opinion unreliable and inadequate to sustain a claim.

*Id*. (quoting *Dodge-Farrar v. Am. Cleaning Servs. Co*., 137 Idaho 838, 842–43, 54 P.3d 954, 958–59 (Ct. App. 2002)).

Here, Lands did not offer expert testimony concerning the cause of her short-term memory loss. While video depositions of Dr. Andrew Garrity and Dr. Shawn Ostler recounting their treatment of Lands following the tripping incident were shown to the jury, neither medical expert opined on the medical cause of Lands' continued short-term memory loss. Instead, Lands relied on her own lay testimony. Yet, Lands herself testified that she did not know whether her short-term memory loss was a result of the fall or her old age:

[Counsel:] You've testified here today, ma'am, that you're suffering from memory issues as a result of the tripping incident that you allege happened on August 7, 2017. Is that correct?

[Lands:] Yes. That and old age.

[Counsel:] Pardon me?

[Lands:] The fall and old age.

[Counsel:] What do you mean by that?

[Lands:] When you get older, you forget things.

[Counsel:] So were you experiencing any memory problems prior to August 7, 2017?

[Lands:] No.

[Counsel:] Or August 9 of 2017?

[Lands:] No.

[Counsel:] And so it's your testimony that you had absolutely no memory problems prior to August 9, 2017. Is that correct?

[Lands:] I've had memory lapses, like any normal person would have. Forget -- you put something someplace so you don't forget where it's at, and you forget where you put it. Just the normal thing.

17

This testimony failed to provide sufficient evidence from which a reasonable jury could determine that Lands' short-term memory loss was caused by the fall. First, the cause of her short-term memory loss, following a fall that occurred several years prior, "is wholly scientific or so far removed from the usual and ordinary experience of the average person[,]" which necessitated expert medical testimony to establish a casual nexus between the fall and Lands' injury. *Holdaway*, 158 Idaho at 612, 349 P.3d at 1203 (quoting *Evans*, 118 Idaho at 214, 796 P.2d at 91). Second, Lands' own testimony established that her memory loss may have resulted from an unrelated cause, that is her old age, and committing this matter to the jury would have merely invited it to speculate as to whether her condition was caused by the fall.

For these reasons, Lands' lay testimony was not sufficient to establish that her short-term memory loss was of a "common nature" or arose from a "readily identifiable" cause. Because her alleged short-term memory loss was the sole basis for seeking non-economic damages following the date of her last medical treatment on September 28, 2017, the district court did not err in giving a jury instruction limiting Lands' non-economic damages.

### C. Attorney Fees.

Lands seeks an award of attorney fees pursuant to Idaho Appellate Rule 41 but did not specify the basis for her entitlement to fees. This Court has "repeatedly held that simply requesting an award of attorney fees pursuant to Idaho Appellate Rule 41, without citing any statutory or contractual basis for the award, is insufficient to raise the issue of attorney fees on appeal." *Sallaz v. Rice*, 161 Idaho 223, 230, 384 P.3d 987, 994 (2016) (quoting *Int'l Real Est. Sols., Inc. v. Arave*, 157 Idaho 816, 821–22, 340 P.3d 465, 470–71 (2014)). "A party must point to a statute or contractual provision authorizing an award of attorney fees on appeal." *Ticor Title Co. v. Stanion*, 144 Idaho 119, 127, 157 P.3d 613, 621 (2007). For this reason, and because Lands is not the prevailing party on appeal, we decline to award Lands attorney fees on appeal.

### IV. CONCLUSION

For the reasons discussed above, we affirm the decisions of the district court. Costs are awarded to Sunset Manor as the prevailing party.

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.

18